**COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,**

v.

**L. T. WHEAT et al., Appellees.**

Court of Appeals of Kentucky.

March 5, 1965.

Robert F. Matthews, Atty. Gen., Wm. A.
Lamkin, Jr., Asst. Atty. Gen., Frankfort,

Reed D. Anderson, Atty., Madisonville,.
Harold K. Huddleston, Elizabethtown, for
appellant.

Charles M. Summers, Campbellsville, for
appellees.

DAVIS, Commissioner.

This appeal presents the contentions of
the Department of Highways seeking to re-
verse a judgment in the sum of $10,000
in a condemnation action. The Department
urges (1) that appellees were allowed to
utilize evidence based upon incompetent
and irrelevant factors of damage, and (2)
that the verdict is grossly excessive and
not supported by evidence of sufficient pro-
bative value.

The proceedings involve a lot in Camp-
bellsville. Prior to the condemnation, the
lot had width of 65 feet and depth of 165
feet. The portion of the lot used as its
"front" faced on First Street, but the lot
extended to and abutted Second Street
also. A twelve-foot alley, connecting First
and Second Streets, abuts the lot on its
eastern line.

On the portion of the lot facing First
Street is situated a concrete block build-
ing, 30 x 45 feet; this building is used as
a service station. Between the building and
First Street there is one concrete island
upon which are located two gasoline pumps.
First Street is regulated for one-way east-
bound traffic (away from the center of
Campbellsville). Prior to the taking, Sec-
ond Street was a low grade thoroughfare,
without curbs, gutters or sidewalks. It was
serving westbound traffic only, and con-
sisted of two lanes. The proposed con-
struction will make of Second Street a
four-lane, two-way street with a median
strip susceptible to being crossed by auto-
mobiles.

The Department is acquiring as perma-
nent right of way a plot from the north
(Second Street) side of the appellees' lot.

The taken portion is a rectangle 65 feet in width, with depth of 39 feet. The new construction of Second Street will necessitate a fill along the north side of the lot. The fill is to be 2.8 feet at the right of way line. In order to make the required fill, and to accommodate a fifty-foot entranceway, the Department is acquiring a temporary easement, 65 x 25 feet, immediately south of the permanent right of way taken. Grading is to be done on the easement so that the surface will attain grade level with the original lot at the toe of the fill; the surface along the fill is to be covered with gravel provided by the Department. Full access to Second Street will be afforded, according to present plans. None of the structures on the lot are disturbed.

The appellant Department presented two witnesses as to values. They expressed opinions that the after value would range from $5,700 to $6,050 less than the before value. Each of these witnesses testified that an additional $500 should be awarded for the temporary easement. It is observed that the before value expressed by one of these witnesses was $30,000; the after value was stated as $24,300, resulting in the $5,700 difference. The other witness placed the before value at $27,350 and the after value at $21,300, reflecting the difference as $6,050.

For the appellees three witnesses gave before and after values as follows:

| Before Value | After Value | Difference | |
|---|---|---|---|
| $49,335 | $38,374 | $11,861 | (sic) |
| 53,870 | 42,470 | 11,400 | |
| 50,500 | 40,000 | 10,500 | |

The first of appellees' witnesses (an owner) did not make any specific reference to any allowance for the temporary easement, although he expressed the view that the change in grade of the highway had a depressing effect on the after value of the remaining lot. The next witness for appellee valued the temporary easement at $1.00 per square foot, or $1,625; this, added

to his $11,400 difference in before and after values, resulted in his total estimate of award due of $13,025. The third witness for appellee placed $1,500 as the value of the temporary easement, so that his total award figure reached $12,000, although for some unexplained reason his testimony is that the total amounts to $11,673.

■ The first point urged by appellant relates to whether evidence for appellees was based upon incompetent and irrelevant factors. In general, the basis for this contention is that witnesses for appellees related that they took into consideration the extent of contemplated damage to the existing service station business. However, the specific portions of testimony to which appellant makes reference, when read in their context, clearly indicate that the witnesses did not base their valuations upon contemplated loss of profit to the existing service station. One of the witnesses expressed the thought that the "temporary" easement was "permanent"; but fairly read, his statement merely incorporated his opinion that the effect of the sloping will have a permanent effect on the remaining lot despite the fact that the condemnor's easement to put it there was temporary. We find no merit in the first point presented.

A more serious question is presented in considering the amount of the verdict in light of the evidence. Witnesses for each side related details of sales of two tracts of land, the Campbell property immediately adjoining the subject property to the east, and the other designated as Taylor County Bank property, immediately east of the Campbell property. To all intents and purposes, the Campbell and Taylor Bank properties are as nearly identical with appellees' property as may be found. The differences exist chiefly in the fact that both the Campbell and Taylor Bank properties possess twice the frontage as that

of the subject lot. The improvements on the latter two lots apparently did not figure measurably in their sales, since in each instance the improvements were demolished. Each of them had frontages on both First and Second Streets, their depth being identical with that of appellees' lot.

The Taylor Bank property was sold before the reconstruction of Second Street for $50,000. The price was for an average. of approximately $2.33 per square foot. The Campbell land was sold *after* the right of way had been taken, so that its depth was reduced exactly as appellees' lot will be. The Campbell property also brought $50,000, so that the per square foot price approximated $2.93. The evaluations ascribed subject property by witnesses for appellees equal $4.25 (and up) per square foot. The only sales suggested by appellees supporting the substantial increase in square foot price are admittedly much nearer the "hub" of the community and in a more valuable section. We are not to be understood as saying that the Campbell and Taylor County Bank sales completely control the evaluations of the appellees' property, but we cannot escape the conclusion that absent some significant distinction, they are of high probative quality. Apart from the fact that the lot of the appellees is slightly nearer the center of the business district, and except for a small differential in the matter of street grade, there is no material difference intimated in the record whereby to distinguish those properties from the land under consideration. Under these circumstances we are impelled to the view that the probative quality of the evidence for appellees is not sufficiently strong to sustain the verdict. It follows that the verdict, resting on that basis, is excessive. See Com. Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, and Com. Dept. of Highways v. Scott, Ky., 385 S.W.2d 330.

The judgment is reversed for proceedings consistent with this opinion.