**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**Drura O. SCOTT et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 20, 1964.

John B. Breckinridge, Atty. Gen., Wm. A. Lamkin, Jr., Asst. Atty. Gen., Joyce

Nedde, Frankfort, George S. Clay, Henderson, for appellant.

William M. Deep, Henderson, for appellees.

DAVIS, Commissioner.

In this condemnation proceeding the appellant Department of Highways is acquiring 0.8 of an acre from appellees' tract, which consisted of 13.2 acres prior to the taking. The Department appeals from the judgment entered on the jury's verdict awarding total recovery of $7,550, itemized as $3,600 for the land taken, plus $3,950 for resultant damages. (This trial was before the decision in Com., Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844.)

Basically, the appellant attacks the judgment on the ground that it is not supported by evidence substantiating it. Other complaints are made relating to claimed error in admission of evidence and refusal of a tendered instruction.

The subject property is situated about 1¼ miles south of Henderson on the east side of U.S. Highway 41. For practical purposes, the original boundary may be described as a right-angled triangle, with its hypotenuse fronting on U.S. 41, and its base being its southern boundary. Before the taking the boundary had a frontage along existing U.S. 41 for a distance of about 1,800 feet. Former U.S. 41 is being changed from a two-way two-lane highway to a four-lane road, with median strip at a point along this frontage. In order to accommodate the added highway facilities the Department is acquiring an irregularly shaped strip along the front of the original tract. The acquired strip extends from the northern point of the original triangle, along the highway right of way, a distance of 1,166 feet. Its width is variable, beginning at zero on the north, widening to sixty feet as it courses southwestwardly, and ultimately having a width of ten feet at its southern extremity. As noted, the taken area embraces 0.8 of an acre.

The proposed new U.S. 41 is to be a free access road. However, due to the narrow tip of the triangle as it existed prior to the taking, the northernmost 130 feet of former frontage will be lost to the appellees.

Appellees have a substantial residence situated upon the tract; there will be no taking or change of condition with respect to the road at any point west of the residence. However, it appears that the residence does not face westwardly toward U.S. 41, but is so situated as to face generally toward the north—and, therefore, toward the site of the taken portion.

The extent of the divergence in the testimony offered by the litigants is summarized:

Witnesses for Appellant:

| Before Value | After Value | Value of Taking | Resultant Damage | Difference |
| --- | --- | --- | --- | --- |
| $63,525 | $61,525 | $2,000 | None | $2,000 |
| 64,495 | 62,545 | 1,950 | None | 1,950 |

Witnesses for Appellees:

| Before Value | After Value | Value of Taking | Resultant Damage | Difference |
| --- | --- | --- | --- | --- |
| $87,600.00 | $70,080.00 | $3,600 | $13,920.00 | $17,520.00 |
| 90,000.00 | 76,584.00 | 3,200 | 10,216.00 | 13,416.00 |
| 86,750.00 | 69,125.00 | 4,000 | 9,500.00 | 13,500.00 |
| 109,012.00 | 91,814.00 | 6,996 | 10,201.60 | 17,197.60 |
| 93,737.50 | 80,303.13 | 3,200 | 10,234.37 | 13,434.17 |

It will be seen from the foregoing that the witnesses for the appellant attributed no damages to the remaining land by reason of the taking. For the appellees damages were estimated to the remainder in sums ranging from $13,416.00 to $17,520.00. As observed, the jury's verdict for resultant damage was $3,950.00. The verdict, both with respect to value of land taken and resultant damage was well within the range of the testimony offered. No serious question is raised as to the verdict for $3,600.00 for land taken. The chief complaint of appellant addresses itself to the verdict for resultant damage.

Appellant attacks the competency of the evidence for appellees as to resultant damages on the ground that the witnesses applied a flat percentage of reduction, e. g. 12% to 25%. We do not find this to be a valid complaint, since the witnesses did cast their testimony within the framework of market values "before" and "after."

However, we do regard as significant the basis upon which the witnesses for appellees pitched their estimates of the resultant damages. For the appellees it was shown that much care and considerable expense had gone into the matter of properly locating the residence upon the land. Appellees showed that a substantial sum had been expended for landscaping and grading in order that the residence and its appurtenant land would conform. It appears that the residence is so constructed and situated that its "picture" windows afforded a view toward the north, rather than toward the highway on the west. Witnesses for the appellees asserted that impairment of the view is heavily damaging to the remaining land. The character of this type of evidence may be better understood from some excerpts from the evidence of the witnesses for the appellees:

"39. Tell the Jury what in your opinion is the damages to the remainder as a result of this taking.

"A. I figured the damages to the remainder would be $10,234.37.

"40. Please explain to the Jury if you will what in your opinion are the elements that constitute this damage.

"A. Well, Mr. Scott's house when it was originally built, I think, I verified this, it was designed by an architect and it was designed to look right down this strip of land down to the point and of course, we had dealings with an architect to design our shopping center and someone, we find out you pay the architect about five percent of the construction price; this architect has designed this house around the land there to make it look a certain way and I judge that an architect's fee today on a house of that type would be seven or eight thousand dollars, and now when this tract of ground is gone from there you wouldn't have no use to hire an architect if you later are not going to abide by his decisions."

\* \* \* \* \* \*

"14. Do you think when you look out and see this highway rather than this one that it is going to cause you to say it has just ruined that view?

"A. I wouldn't say it has completely ruined it, I would say it takes something away from the view and from the dwelling.

"15. So your estimate of the damage to the remainder is based entirely, is it, upon the view out away from this house, is that the basis of your taking away from the remainder?

"A. Well I say it detracts from the homesite and of course it will affect the landscaping, he will

probably have to change the landscaping.

"16. Now is there any landscaping on this part of the tract at all?

"A. I think there is about two trees.

"17. Other than these trees down this old way or fence line, is there anything that he has done out there since he has been there to landscape this portion of the property?

"A. I'd say he has spent a world of money getting that sod and grass.

"18. Well, are there any trees or landscaping on it?

"A. No.

"19. Is there landscaping on the other property?

"A. Yes sir.

"20. Is not the landscaping around the house and leads out to the road along the driveway and in front of the house and toward the road?

"A. Yes sir.

"21. So that that is where he has done his landscaping and beautified his place up there around his house and between his house and road, is that right?

"A. I'd say he has done a lot of dirt work on all of it to get it in shape to have the smooth lawn and sod he has.

"22. And as I understand your figure, you haven't called attention to anything else except the change in the view and making it so that the house doesn't fit right as being the basis for the damage to the remainder, is that right?

"A. I would say one other factor, the fact that the highway will be some closer to his home.

"23. Well that all enters into the same thing?

"A. Correct.

"24. It won't be any closer out here at the closest place?

"A. No, it won't be."

It should be stated that although appellee Drura Scott flatly said that he would not utilize his property for purposes of subdivision during his lifetime, he nevertheless premised his resultant damage figures on diminution of its adaptability for subdivision purposes. In his own words, his ideas are thus put:

"58. Now just review for the Jury what items of damage you considered as being incurred to your property as a result of this taking other than what you have just discussed there?

"A. Well, in case of my death and my wife ever saw fit to want to build houses or plat this thing out by taking this here, it would run way up along here then before she could start anything, and it just absolutely ruins this piece of ground as far as ever doing anything with it. I don't have any intention of doing it in my lifetime, but if she ever did take a notion."

Moreover, in support of the acreage prices quoted for the land, appellee Scott and his witnesses referred to lots sold for subdivision purposes. The appellant made timely motions to strike the evidence relating to the resultant damage, primarily on the ground that it is inconsistent to ascribe damages for loss of an aesthetic panorama in one breath, while fixing lot values which presuppose building of dwellings which will effectively interrupt the same view. We agree with appellant's position.

We believe it is apparent that the evidence offered for appellees as to result-

ant damages bears an *ipso facto* stigma of being without sufficient probative value to warrant the conclusions expressed by the witnesses. There can be no question that it was improper to allude to the expense of architectural planning as a premise for "after" market value. Neither may it be supposed that compensation may be had for impairment of the aesthetic appreciations of the appellees. We have no quarrel with the idea that impairment of appearance or outlook which affects market value is compensable. The difficulty before us arises from the fact that both "before" and "after" values of the land are based on use of the property as a developed subdivision. The subdivision would certainly materially disturb the view from the Scott residence, and substantially more than could the new highway construction. Under these conditions we hold that the present case is ruled by the precepts outlined in Com., Dept. of Highways v. Raybourne, Ky., 364 S.W.2d 814, and Com., Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472. Consequently, the unsatisfactory evidence for appellees as to resultant damages falls short of the probative quality required to support the jury's finding on that issue.

■ Likewise, it was error to permit one of the witnesses for appellees to attribute separate damages of $1,000 for trees embraced in the taking. Upon another trial, this will not be allowed. Com., Dept. of Highways v. Stamper, Ky., 345 S.W.2d 640.

■ Neither should there be allusion to the question of inconvenience because the four-lane highway will require some additional driving in approaching the property from the north. Cartee v. Com., Dept. of Highways, Ky., 374 S.W.2d 860.

■ There appears to be no merit in appellant's contention that the court should have instructed the jury to give consideration to enhanced value by reason of the prudent construction of the highway. There was no evidence offered reflecting any such enhancement. If the evidence upon a new trial is the same, there will be no requirement for an instruction as to enhancement.

Upon a new trial the jury will be instructed as prescribed in Com., Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844, and Com., Dept. of Highways v. Priest, Ky., 387 S.W.2d 302. (Decided November 20, 1964).

The judgment is reversed for proceedings consistent with this opinion.

PALMORE, J., not sitting.