[No. 37955.   Department Two.   April 21, 1966.]

*In the Matter of the Petition of* THE HOUSING AUTHORITY OF THE CITY OF SEATTLE.

THE HOUSING AUTHORITY OF THE CITY OF SEATTLE, *Respondent,* v. WALTER SCOTT BROWN *et al., Appellants.**

*Hullin, Ehrlichman, Carroll & Roberts,* for appellants.

*LeSourd & Patten* and *Dwayne E. Copple,* for respondent.

HAMILTON, J.—The Housing Authority of the City of Seattle provides living accommodations for elderly persons with low incomes in what is designated as the Yesler Ter-

*Reported in 413 P.2d 635.

race Project. The Housing Authority is endeavoring to expand this project by the construction of a 300-unit high-rise apartment building. To accomplish this necessitates the condemnation of certain contiguous property.

This case arises out of such a condemnation proceeding and presents an appeal from a judgment and decree of appropriation awarding the sum of $37,500 to appellants-condemnees, Dr. and Mrs. Walter Scott Brown. The following diagram lends some understanding to the factual recitation necessary to reach appellants' contentions.

The condemned parcel (Lot 8 on the diagram) was owned by appellants and is located on one corner of the proposed apartment house site. The lot to the east (Lot 7 on the diagram) was and is also owned by appellants and contains a combined medical clinic and residence. The residence portion of the building is so constructed and situated as to command a sweeping view of the business district of the city of Seattle, Elliott Bay, West Seattle, Puget Sound, and the Olympic Mountains. Prior to condemnation, Lot 8

was used as a parking area in conjunction with the medical clinic.

The proposed high-rise apartment facility will be situated upon a site consisting of Lots 1, 4, 5, 8, and an equivalent area across and southwest of 8th Avenue. To accommodate the structure, 8th Avenue is to be vacated. When completed the building will be of such height, dimension, and position as to block out a substantial portion of the westerly view from appellants' residence on Lot 7.

In anticipation of the building project, the Housing Authority sought and obtained a rezoning of the surrounding property from multiple residence low density zone, which establishes a building height limitation of 35 feet, to multiple residence high density zone, which, while not establishing a fixed maximum building height, requires increased depth of side and rear yards for each additional story of a building. Building height is also restricted in that it cannot exceed one and one-half times the mean horizontal distance from the building to the center line of abutting streets. Therefore, as a building is increased in height, it must be set further and further back from side and rear property lines and from abutting streets.

As related to the instant case, this change in zoning meant that by condemning Lot 8, the Housing Authority increased the area available for side and rear yards for the projected apartment, which, with the vacation of 8th Avenue, made it possible to construct a taller and wider building thus diminishing appellants' view.

Although Lots 7 and 8 were acquired by appellants at different times, for different purposes, and were separated by a platted but unopened alley, the trial court treated the two lots as a single unit for purposes of determining the amount of just compensation to be awarded for the taking of Lot 8. Thus, the factor of the projected interference with appellants' view from their residence on Lot 7 became a factor for consideration in measuring the severance or consequential damage resulting from the taking of Lot 8.

In submitting the loss of view factor to the jury for consideration in determining the after value of Lot 7, the trial court gratuitously prepared and gave an instruction embracing a definition of the word "view" as applied to the situation presented. In the same instruction, the trial court also incorporated two interrogatories calling upon the jury to spell out the portion of its overall award which it attributed to such loss of view. Appellants took exception to this instruction, and it is upon this objection that they predicate their appeal.

■ In substance, the instruction advised the jury that it should consider the projected loss of view in two senses: (1) The obstruction to view of and from 8th Avenue, and (2) the impairment of view of the scenery beyond 8th Avenue across *property not controlled by appellants.* Appellants contend that mention of the two categories of view and use of the phrase "property not controlled" unduly and improperly restricted the jury's consideration of the factor of loss of view from Lot 7.

We agree with appellants that the instruction, together with the interrogatories under the circumstances and contentions of this case, tends to cast some confusion on the issue of loss of view. We cannot agree, however, that the giving of the instruction so prejudiced appellants as to warrant a reversal. We reach this conclusion for several reasons.

First, appellants' appraiser testified that he attributed a $6,667 depreciation in value to Lot 7 as a result of the loss of view. The jury, in answer to the interrogatories posed in the challenged instruction, stated its evaluation of this factor amounted to $6,600. It is apparent, therefore, that the jury was not so confused by this instruction as to have failed to grasp the value appellants' only expert witness assessed to this facet of the severance damage.

■ Second, the loss of view occasioned by a proposed public structure to be erected, in part at least, upon a parcel of property taken by condemnation from a unit of property, so far as constituting a factor to be considered in determining severance damage, is to be measured by the effect the

obstruction of view, created by the structure, has upon the market value of the residue of the unit of property. See Annot., 84 A.L.R.2d 348, § 4, at 360 (1962). This was the thrust of appellants' evidence and the essence of their contentions with respect to the loss of view from Lot 7. It was likewise the import of the challenged instruction, for under its language the jury was permitted to consider the loss of view from Lot 7 to and including 8th Avenue and the scenery beyond. This is particularly true when the challenged instruction is read in conjunction with another instruction given by the trial court, wherein the jury was advised it could consider "any impairment of light, air and view; and all other evidence bearing upon the market price which a willing buyer, having knowledge of all the facts, would pay a willing seller for the remaining property."

Finally, the use of the phrase "over property not controlled by the abutting owner [appellants]," in the challenged instruction, when read in the context of the evidence relating to the severance damage to Lot 7 and in the light of the other instructions is not ambiguous, nor does it exclude the jury's consideration of the asserted loss of view from Lot 7 over and across Lots 1, 4, and 5 as contended by appellants. We are convinced that any potential misconceptions that could be said to arise from the use of the word "controlled" in the instruction find their genesis in the ingenious and convincing argument made to the jury by appellants' counsel. The fact that the jury returned an amount just short of the amount testified to by appellants' expert witness would, however, tend to reflect the effectiveness of counsel's argument to the jury rather than suggest any confusion on its part flowing from the challenged instruction.

Finding no prejudicial error, we affirm the judgment.

ROSELLINI, C. J., DONWORTH and WEAVER, JJ., and BARNETT, J. Pro Tem., concur.