IOWA-ILLINOIS GAS AND ELECTRIC COMPANY, Petitioner-Appellant, *v.* WILLIAM H. HOFFMAN *et al.*, Defendants-Appellees.

Third District   No. 3—83—0664

Opinion filed August 6, 1984.—Rehearing denied October 11, 1984.

Dennis R. Fox, of Califf, Harper, Fox, Dailey & Slover, of Moline, for appellant.

Samuel S. McHard and Donovan S. Robertson, both of Katz, McAndrews, Durkee, Balch & Lefstein, of Rock Island, for appellees.

PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Iowa-Illinois Gas and Electric Company (hereinafter utility) appeals from the judgment of the circuit court, entered after jury verdict in this eminent domain action. In the action, the jury determined the amount of damages, as compensation to the landowners for the utility's acquisition of a perpetual easement across their farm for the construction and maintenance of high voltage electric transmission lines. The focus of the issues on appeal is the jury's determination that fair and reasonable compensation for damages to the remainder of the property, as a result of the presence of the transmission lines and structures, was $57,119.50, or $355 per acre. The utility raises issues concerning the instructions and as to evidentiary rulings of the court.

The utility filed its condemnation action against the landowners in 1982. Authorization for the condemnation proceedings had been given by the ICC, for the purpose of acquiring a right-of-way along and across the landowners' farm, to construct, operate and maintain a 345 KV electric transmission line. The easement to be acquired runs across the farm in an east-west direction and is 150 feet wide, 3,200 feet long, containing 11 acres of land. The total farm acreage is 172 acres. The evidence indicated that two large H-frame structures will be constructed on the farm, from which the 345 KV lines will be suspended. The structures are to be 127½ feet tall and 117½ feet tall, respectively.

The landowners filed their cross-petition, seeking compensation for damages to their property outside of the easement strip that would be caused by the presence of the two structures and the transmission lines. The total acreage in the remainder of the farm is 161

acres. The utility did not contest that some damage to the remainder would occur, but it did dispute the amount of such damages. The central dispute at trial was the amount of damages to the remaining 161 acres occasioned by the presence of the easement, with structures, on 11 acres.

The utility's appraisal experts put the amount of damages to the remainder at $10 and $20 per acre. Both experts noted as the basis for the damage assessment the inconvenience in farming around the two large support structures to be placed on the easement. Testifying on behalf of the landowners were two appraisers, as well, in addition to one of the plaintiffs, Darrel Hofer, and a neighboring farmer. Tom Kilcoin, one of the landowners' appraisers, testified to his opinion that damages to the remainder of the farm were about $700 per acre. Kilcoin felt that such a reduction in market value of the farm would result from the imposition of the easement. He based his assessment, in part, upon his findings that prospective farm buyers, other farmers, do not like such easements on the property. Steve Relander, the other appraiser for the landowners, gave his opinion that the amount of damages to the remainder would be $300 per acre. Relander's opinion was based, in part, upon a comparable sale of another Knox County farm in April 1983 which had a utility easement on it.

Testimony from Darrel Hofer, one of the appellees, focused upon the problems in having the easement and support structures on the property. Among the problems specified were: (1) difficulty farming around the power poles; (2) the presence of weeds and growth around and under the poles; and (3) interference from the lines upon electrical monitors on his farm equipment.

The jury heard the conflicting evidence as to the damage to the remainder and returned its verdict in the amount of $57,119.50, or $355 per acre, as the amount of damages to the remainder. The utility appeals from this award. Other pertinent facts will be set forth, as necessary, during the treatment of the issues on appeal.

■■■ The initial issue is whether evidence of the unsightliness of the transmission line structures on the property was properly admitted into evidence before the jury. The utility argues that unsightliness is not a proper element of damages, citing as a principal basis to some early twentieth century Illinois Supreme Court cases and a recent appellate decision. (*Illinois Power Co. v. Wieland* (1927), 324 Ill. 411, 155 N.E.272; *Illinois Power & Light Corp. v. Peterson* (1926), 322 Ill. 342, 153 N.E. 577; *Commonwealth Edison Co. v. Danekas* (1982), 104 Ill. App. 3d 907, 433 N.E.2d 736.) The court, in the *Danekas* case, found a limited exception to the rule against the admissibil-

ity of such evidence, where the highest and best use for the property to be burdened was a residential use. (104 Ill. App. 3d 907, 913.) In the case at bar, the testimony indicated that the highest and best use of the property was for agricultural purposes. The utility now contends that the court erred in refusing to instruct the jury, by its submitted instruction, that the unsightliness of the structures was not a proper element of damages and should not be considered in their assessment of damages. The landowners argue, to the contrary, that their expert brought forth the unsightliness of the structures only as it bore on the reduction in market value to the prospective buyers of the farm and that, as such, it was properly in evidence before the jury. We agree. The rule of law adopted in the early cases grew out of the established principle that damages only be awarded for physical disturbance of a right belonging to the landowner. (*City of Winchester v. Ring* (1924), 312 Ill. 544, 553; *Illinois Power Co. v. Wieland* (1927), 324 Ill. 411, 414-16.) The cases almost uniformly determined that the unsightliness of the structures, being an offense to the sensibilities of the owner, was not a compensable damage. (*Contra, Board of Trade Telegraph Co. v. Darst* (1901), 192 Ill. 47, 50, 61 N.E. 398.) The courts' rejection of unsightliness as a compensable element of damages was also based upon a conclusion that such damage was speculative and largely unquantifiable. It is also useful to note that those early cases arose during the time of the immensely beneficial rural electrification program, with burdens and benefits to the rural public as a whole. In addition, they dealt with poles of considerably less dimension than the 345 KV towers involved in the instant case. As this court noted in *Central Illinois Public Service Co. v. Westervelt* (1976), 35 Ill. App. 3d 777, 781-82, 342 N.E.2d 463, *aff'd* (1977), 67 Ill. 2d 207, 367 N.E.2d 661, whatever can be shown to adversely affect market value is admissible. There we noted that the focus was not properly upon the offense to the owner's sensibilities, but rather upon the effect of the unsightliness upon the public, and specifically a purchasing public, as it affects market value. In the instant case, the evidence presented and accepted by the trial court as admissible was that the unsightliness of the structures, along with other factors, would have a detrimental effect upon the market value, what a willing purchaser would be willing to pay for the property. We find that the evidence of unsightliness, as related to market value and the appraisal testimony, was properly admitted at the trial. In response to the utility's argument about highest and best use, we find it makes little rational difference whether the highest and best use of the property was for residential purposes or for agricultural purposes. There is no reasonable

basis for concluding that unsightliness shown to have a detrimental effect upon the market value of residential property is compensable, but unsightliness shown to have a detrimental effect upon the market value of agricultural property is not compensable. The one damage is not more inherently speculative or elusive than the other. Appraisers can determine both and be cross-examined as to their methods. Owners, whether of residential property or of agricultural property, are entitled to compensation for damages occasioned by the presence of such structures. Where properly established, the adverse effect of the unsightliness of such structures upon the market value is as valid and proper an element of damage as any other. The extent and amount of such damage is a matter for expert testimony to set forth and for the jury to ultimately decide. We believe the Illinois Supreme Court's movement away from the "no-compensation rule" of the twenties and early thirties was a reasonable and necessary one (*Central Illinois Public Service Co. v. Westervelt* (1977), 67 Ill. 2d 207, 367 N.E.2d 661), and we find no rational basis to limit the new rule to situations involving residential land only. We do not read the *Westervelt* case, which affirmed our decision, to indicate that the court would not apply the rule of compensation in cases where proper evidence indicated that unsightliness had an adverse effect upon the market value of agricultural land. In so concluding, we respectfully disagree with the Second District in the *Danekas* case.

■ We find no error in the court's refusal to give petitioner's instruction No. 19, nor in the admission of testimony relating to unsightliness as it affected the market value of this farm property.

■ The next issue concerns the refusal by the trial judge to give two instructions tendered by the utility setting forth the general rule that damages are not recoverable which are altogether speculative and uncertain. The trial judge, in admitting the evidence and refusing the instruction, obviously concluded that the evidence was not speculative and uncertain. We agree with the trial judge. The utility's specific objection is to evidence indicating: (1) that the transmission lines would interfere with the electrical monitoring devices on the farm equipment; and (2) that a hog is a very stressful animal and that noise from the lines would likely produce stress in the hogs on the farm. While conceding that Darrel Hofer was properly qualified as an expert with regard to certain aspects of the hog farming operation on the property, the utility argues that his testimony about the above matters was beyond his expertise. We disagree. The record indicates that Hofer had been a hog farmer for approximately 28 years. His testimony concerning the stressful nature of hogs and the effect of

noise stress upon their well-being, as well as the hog operation and its income, was within his competence. His lifetime experience raising hogs provided sufficient expertise for him to testify on this subject, and we find no necessity of calling an additional expert upon noise and its effect on hogs. There is no question that danger to livestock and its effect upon market value is for the jury's assessment, based upon such evidence. Similarly, Hofer's experience with the effects of other, lower voltage transmission lines upon farm monitoring equipment was sufficient to support his testimony as to the effects of these 345 KV lines on similar equipment. It was not necessary to call another expert to explain, technically, how the interference would be caused. Hofer was not outside of his expertise, gained from experience, in testifying to the effects of the presence of the transmission lines on his hog operation and his farm vehicles' monitoring equipment. These aspects of damages were not of the same speculative and uncertain nature as those in the cases relied upon by the utility.

■ Objection is also presented by the utility to Hofer's testimony concerning the costs of improvements on the property, and it is urged that such evidence was improperly admitted and prejudicial. Hofer testified that he had made improvements to the property in excess of $100,000 since 1978 and 1979. This evidence did have a relevance to the market value of the property, as it was affected by those improvements. While we agree with the utility that such evidence might cause some confusion for the jury, we think no sufficient prejudice arose from the admission of this evidence. There is no indication that the jury added the value of the improvements to the figures already set forth for market value. Evidentiary matters are within the broad discretion of the trial judge, as is conceded, and we find no abuse of discretion in the court's rulings on this testimony. Additionally, we would note the established rule that in condemnation proceedings, where there is conflicting evidence of value, a jury's award, within the range of values testified to, will not be disturbed unless there has been a clear and palpable mistake, or the verdict is the result of passion and prejudice. (*Department of Public Works v. Klehm* (1973), 56 Ill. 2d 121, 306 N.E.2d 1; *Central Illinois Public Service Co. v. Westervelt* (1977), 67 Ill. 2d 207, 367 N.E.2d 661.) Nothing in the record here indicates that the jury's verdict was the result of prejudice or passion, and no clear and palpable mistake has been shown.

■ The final issue concerns the testimony of the landowner's witness, Allan Fuhr, on rebuttal. The utility argues that the court abused its discretion in permitting Fuhr to testify, because he had not been disclosed as an expert witness prior to the trial. The question of ap-

propriate sanctions is one for the sound discretion of the trial court. The critical focus in the instant case is upon the use of witness Fuhr by the landowners. He was not called in their case-in-chief, as an expert, which would clearly have violated their previously disclosed list of experts, which did not include him. He was only called on rebuttal, for the purpose of responding to testimony from the utility's witness Robert Baecke. Baecke had testified to his observations concerning the effect of the 345 KV lines on radio transmissions, and upon the impact of the power lines on the market value of the property. In his testimony, Baecke indicated that he had talked with Fuhr on the latter question. On rebuttal, Fuhr testified to problems he encountered, personally, in operating monitoring devices and radio equipment under power lines. He also testified to the inconvenience in farming around the utility line structures, as experienced by him on his own farm property. His testimony concerning the effects of the lines on market value was in rebuttal to Baecke's testimony, which in part was based upon alleged conversations with Fuhr on the same subject. We find Fuhr's testimony to be proper rebuttal, and no abuse of discretion in the decisions of the trial judge. In light of the limited use of his testimony, we will not reverse the court's decision permitting him to testify, despite his not having been disclosed prior to trial. We note, in this regard, that the trial court gave an express and specific instruction to the jury, limiting the scope of Fuhr's testimony to rebuttal matters. Under all the circumstances, we find no error in his admitted testimony and the court's rulings thereon.

The appellee landowners seek to raise another issue, respecting the entry into possession of the property by the utility during the pendency of this suit. Since the taking was not appealed, the trial court granted the utility the right to enter upon the land, conditioned upon their filing of sufficient surety bond. Bond in the amount of $79,000 was filed and approved. Later, we denied the landowners' motion for a stay. There has been compliance with section 7—125 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 7—125). Moreover, this issue, and another sought to be raised by the appellees, are not properly raised, since no petition for cross-appeal has been made.

For the reasons stated, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HEIPLE and BARRY, JJ., concur.