LA PLATA ELECTRIC ASSOCIATION, INC., a Colorado corporation, Petitioner,

v.

Louis M. CUMMINS; Leona E. O'Brien; John E. Ranne; Alameda M. Ranne; Earl W. Rounsaville, a/k/a Earl W. Roundsavill; Buckley D. Wagner, a/k/a Buck D. Wagner; Laquita J. Wagner; Bank of Durango; Rickie Lee Londe; and Clyde Demel, as Public Trustee of La Plata County, Colorado, Respondents.

No. 85SC82.

Supreme Court of Colorado, En Banc.

Nov. 10, 1986.

As Modified on Denial of Rehearing Dec. 8, 1986.

Maynes, Bradford & Shipps, Sara Duncan, Durango, for petitioner.

E.B. Hamilton, Jr., Durango, for respondents.

Horn, Anderson & Johnson, Gregory L. Johnson, William Kelly Dude, James J. DuBois, Colorado Springs, for amicus curiae Colorado Ass'n of Mun. Utilities.

Fischer, Brown, Huddleson & Gunn, Charles R. Huddleson, Bryan W. Blakely, Fort Collins, for amicus curiae Platte River Power Authority.

LOHR, Justice.

The question presented in this case is whether owners of real property who have a portion of their property condemned for the purpose of constructing an electric power line are entitled to compensation for reduction in the value of the remainder of the property resulting from aesthetic damage and loss of view. In *La Plata Electric Ass'n, Inc. v. Cummins*, 703 P.2d 592 (Colo.App.1985), the Colorado Court of Ap-

peals held that the La Plata County District Court did not err in admitting evidence of loss of aesthetic value and view and approving compensation for damage to the remainder of the landowners' property caused by that loss. We granted the petition for certiorari filed by the condemning authority, La Plata Electric Association, Inc. We affirm the judgment, for we conclude that a property owner is entitled to present evidence concerning, and receive compensation for, all damage to the value of the remainder resulting from a partial taking of real property.

## I.

In May 1981, petitioner La Plata Electric Association, Inc. (La Plata), a cooperative electric association, filed a petition in condemnation in La Plata County District Court. La Plata sought a fifty-foot-wide easement for an electric power line across the middle of a 19.553 acre parcel of land owned by respondents Buckley D. Wagner and Laquita J. Wagner.[1] The land is situated near Durango and commands a view of that city and of the mountains beyond it. Proceedings before the district court judge resulted in the award of immediate possession to La Plata and the resolution of all other issues except for the amount of compensation. While the compensation issue remained pending, La Plata constructed the power line.

The district court appointed a board of three commissioners to determine the amount due to the Wagners in compensation for the taking. See § 38–1–105(1) and (2), 16A C.R.S. (1982 & 1985 Supp.). At a hearing held by the commissioners, La Plata presented evidence, through an appraiser, that the highest and best use of the Wagners' property was as investment property to be held for future development,

that the value of the property actually taken was $2,811, and that there was no damage to the remainder of the property. Elaborating on this latter conclusion, the appraiser stated that in his opinion any unsightliness or loss of view caused by the construction of the power line had no effect on the value of the remainder of the property.

Buckley Wagner and two appraisers appearing on behalf of the Wagners testified and agreed with La Plata's expert as to the highest and best use of the Wagners' property. They differed with La Plata's appraiser, however, as to the value of the property taken and as to the effect of the taking on the value of the remainder. Of particular relevance to this review, these witnesses testified that the value of the remainder was reduced by reason of the unattractiveness of the power line and the impairment of view resulting from its construction. La Plata objected to the admission of any evidence concerning a diminution of value caused by loss of view and aesthetic damage on the ground that a reduction in property value stemming from these causes is not compensable as a matter of law. The district court denied the objection.

Following the hearing, the commissioners submitted a written certificate reflecting their findings that the value of the property taken was $4,844 and that the damages to the remainder were $5,000. The district court entered a judgment based on these findings.

La Plata appealed, challenging only the award of compensation for injury to the remainder of the Wagners' property. The court of appeals affirmed, *La Plata Electric Ass'n, Inc. v. Cummins*, 703 P.2d 592 (Colo.App.1985), and we granted La Plata's petition for certiorari.[2]

---

1. La Plata's petition in condemnation concerns four separate parcels of land and ten respondents, each of whom had an alleged interest in at least one of the parcels. Only the parcel owned by the Wagners is involved in this review. The petition in condemnation states that the Bank of Durango "is otherwise interested in [the Wagners'] property" as well. The Bank of

Durango did not make an appearance in the district court, on appeal or in this certiorari review.

2. In the court of appeals, La Plata challenged the award of compensation for damage to the remainder of the property on four grounds. First, La Plata argued that the trial court erred

## II.

"Private property shall not be taken or damaged, for public or private use, without just compensation." Colo. Const., art. II, § 15. When a portion of a landowner's property is taken, just compensation includes compensation for injury to the remainder of the property as well as payment for the portion actually taken. The proper measure of compensation for injury to the remainder is the reduction in the market value of the remaining property that is caused by the taking. *Mack v. Board of County Commissioners*, 152 Colo. 300, 304–05, 381 P.2d 987, 989 (1963). In the present case, the commissioners found that the value of the remainder of the Wagners' property had been reduced by $5,000 as a result of the taking. The court of appeals affirmed that finding as supported by the evidence, 703 P.2d at 594–95, and we accept that holding on evidentiary sufficiency as conclusive for the purpose of this opinion, *see* footnote 2.

La Plata contends, however, that the trial court erred in permitting the commission to consider evidence of diminution of value of the remainder of the Wagners' property resulting from the adverse aesthetic impact of the power line and the impairment of view resulting from its construction. The resolution of this issue is dependent upon the answer to the question of whether diminution of market value attributable to these causes is legally cognizable.

This court has often held in the past that in order for a property owner to be entitled to compensation, "the damage to the property must affect some right or interest which the landowner enjoys and which is not shared or enjoyed by the public generally. The damage must be different in kind, not merely in degree, from that suffered by the public in general." *Troiano v. Colorado Dept. of Highways*, 170 Colo. 484, 494, 463 P.2d 448, 452 (1969). *Accord State Dept. of Highways v. Davis*, 626 P.2d 661, 664–65 (Colo.1981); *Majestic Heights Co. v. Board of County Commissioners*, 173 Colo. 178, 187, 476 P.2d 745, 749 (1970); *Radinsky v. City & County of Denver*, 159 Colo. 134, 138, 410 P.2d 644, 646–47 (1966); *Gayton v. Dept. of Highways*, 149 Colo. 72, 79, 367 P.2d 899, 902 (1962); *Lavelle v. Town of Julesburg*, 49 Colo. 290, 300–01, 112 P. 774, 778 (1911); *Denver & Santa Fe Ry. Co. v. Hannegan*, 43 Colo. 122, 126–27, 95 P. 343, 344–45 (1908); *Gilbert v. Greeley, Salt Lake & Pacific Ry. Co.*, 13 Colo. 501, 508–09, 22 P. 814, 816 (1889); *City of Denver v. Bayer*, 7 Colo. 113, 115–18, 2 P. 6, 7–9 (1883); *Hayes v. City of Loveland*, 651 P.2d 466, 468 (Colo.App.1982); *City of Lakewood v. DeRoos*, 631 P.2d 1140, 1142–43 (Colo.App.), *cert. denied* (Colo.1981). Of particular relevance to this case, we held in *Troiano* that a loss of view from property caused by the construction of a viaduct on adjoining property was not compensable, as the loss attributable to this factor constituted a type of damage suffered by the public in general, not damage unique or special to the subject property. 170 Colo. at 500, 463 P.2d at 455–56. We considered a form of aesthetic damage, that is, "[l]oss

---

by permitting the commissioners to consider evidence of aesthetic damage and loss of view. The court of appeals rejected this argument for the reasons discussed in the text. La Plata also argued that the trial court improperly admitted evidence regarding alleged health hazards associated with the power line, that the trial court improperly admitted evidence regarding interference with radio and television signals by the power line, and that the evidence was not sufficient to support the award of damages for injury to the remainder. The court of appeals also rejected these last three assignments of error. 703 P.2d at 594–95. La Plata raised only the first two of these four issues in its petition for certiorari. We granted certiorari only to consider the first issue, that is, whether as a matter of law evidence of aesthetic damage and loss of view caused by the construction of a power line is admissible in a condemnation proceeding for the purpose of establishing diminution of the value of the remainder. In its briefs in this court, La Plata argues extensively that the evidence presented by the Wagners was not sufficient to support a finding that the value of the remainder of the property was reduced due to aesthetic damage and loss of view. This matter is outside of the scope of the issue approved for certiorari review, and we decline to address it in detail. It suffices to state that our review of the record for other purposes discloses no apparent merit to a challenge to the sufficiency of the evidence.

of affinity or eye appeal," resulting from the construction of the structure to be similarly noncompensable. 170 Colo. at 500–01, 463 P.2d at 456.

Most of our prior cases, including *Troiano*, have involved inverse condemnation actions by landowners in which these owners claimed that damage to their property resulted from the use of adjoining or nearby land by a public entity; no physical taking of the plaintiff landowners' property occurred. However, two of our cases, one early in the century and the other recent, did involve damages to the remainder of a landowner's property incident to a condemnation. *State Dept. of Highways v. Davis*, 626 P.2d 661 (Colo.1981); *Lavelle v. Town of Julesburg*, 49 Colo. 290, 112 P. 774 (1911).

In *Lavelle v. Town of Julesburg*, we held that an owner of three contiguous lots could not be compensated for damages for noise, smoke, vapors and increased dangers from fire resulting to those lots when the town condemned an adjacent lot used as a means of ingress and egress to the three lots. The condemned lot was taken for construction of a power house for a waterworks system. We considered these damages to be shared by the public generally and held, without detailed discussion, that such damages are noncompensable.

Then recently, in *State Dept. of Highways v. Davis*, a case involving limitation of access to a freeway, we held that whether property was actually taken was immaterial to the issue of damage to the remainder based upon loss or limitation of access. 626 P.2d at 665. The Davises sought compensation for damage to the remainder of their property due to the loss of direct highway access when the state condemned a strip of their land in order to build a frontage road as part of a project for improvement of State Highway 50 to create a limited access freeway. *Id.* at 662–63. The court of appeals allowed recovery, specifically recognizing a distinction between the award of compensation in the case of a partial taking—in which all resulting damages are compensable—and the case of al-

leged damage when no land has been taken—in which only damages unique or special to the property are recoverable. *State Dept. of Highways v. Davis*, 42 Colo.App. 250, 251–52, 596 P.2d 400, 401 (1979). We reversed, and held that "[t]he same criteria must be used in both instances," as "[a]ny other result would create serious problems of fairness to landowners similarly situated." 626 P.2d at 665 (*citing State Commissioner of Transportation v. Charles Investment Corp.*, 143 N.J. Super. 541, 363 A.2d 944 (1976)).

La Plata argues that the principles expounded in *Troiano* and in *State Dept. of Highways v. Davis* apply in the present context and that the property damage allegedly suffered by the Wagners is not different in kind from the adverse effect the power line has on all the other properties through which it passes or from which it can be seen. The court of appeals rejected La Plata's argument, but not on the ground that the general damage/special damage distinction did not apply. Rather, the court of appeals held that the reduction in property value attributable to the construction of the power line constituted special damages under the circumstances.

> The trial court here, in ruling on admissibility, distinguished both of those cases [*Troiano* and *DeRoos* ] from the present one in that the use to be made of the property taken here specifically and uniquely affects the remainder of respondents' property. The powerline crosses the respondents' property almost in the middle and the unsightliness or loss of view does not affect any other owner or the public in a general way.

> The trial court held that evidence as to the adverse effect on the market value of the remainder caused by erection of the powerline was admissible. We agree.

703 P.2d at 594. The court of appeals then went on to "adopt" a rule followed in other states "specifically relating to power lines," in which compensation is allowed "for loss of aesthetic value or view that results in loss of market value to the remainder." *Id.* The court of appeals held

that such a rule is "consistent with the general rule in *Troiano* and *DeRoos* requiring that such damage be special to the condemnee and be supported by evidence of diminution of market value caused by the taking." *Id.*

While we agree that the Wagners are entitled to compensation for the reduction in the market value of their remaining property, we decline to follow the court of appeals' reasoning. Contrary to what is implied in the court of appeals' opinion, the district court did not make a finding that La Plata's use of the Wagners' property "specifically and uniquely affects the remainder of respondents' property" or that because the power line crossed the property in the middle, "the unsightliness or loss of view does not affect any other owner or the public in a general way." Moreover, it cannot be said that evidence in the record substantially supports the quoted statements. Without belaboring the point, we conclude that the very nature of a power line—which generally runs for some distance across or near various properties from which it can or must be seen—necessarily causes any adverse aesthetic effect of a power line to be experienced throughout the general community, except in special circumstances not present here. Although some property owners may suffer greater aesthetic harm or view impairment than others from the presence of the power line, this simply amounts to damage of a greater degree, not of a different kind.

■ Instead of adopting the approach taken by the court of appeals, we conclude that the general damage/special damage distinction has no validity in the present context, that is, when the reduction in property value results from a taking of a portion of the land held by the property owner. In such circumstances, we hold that a property owner should be compensated for all damages that are the natural, necessary and reasonable result of the taking. *Mack v. Board of County Commissioners*, 152 Colo. at 306–07, 381 P.2d at 990; *Farmers' Reservoir & Irrigation Co. v. Cooper*, 54 Colo. 402, 407, 130 P. 1004, 1006 (1913). To the extent that *Lavelle v. Town of Julesburg* is to the contrary, we overrule it.

We adopt this rule for two reasons. First, it is supported by the decisions in a significant majority of the jurisdictions in this country that have considered these questions. Some of these authorities explicitly recognize a distinction between the assessment of compensation in the case of a partial taking—in which all damages that flow from that taking are compensable—and the assessment of compensation in the case of alleged damages when no land has been taken—in which only damages unique or special to the property are compensable. Others approve compensation, without sophisticated explanation, when the evidence establishes a reduction in the value of a remainder because of general aesthetic damage flowing from the construction of a public improvement on the portion taken.[3]

**3.** *See, e.g., United States v. 15.65 Acres of Land*, 689 F.2d 1329, 1331–32 (9th Cir.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983); *Pierpont Inn, Inc. v. State of California*, 70 Cal.2d 282, 74 Cal.Rptr. 521, 529–30, 449 P.2d 737, 745–46 (1969); *Central Illinois Public Service Co. v. Westervelt*, 67 Ill.2d 207, 10 Ill. Dec. 208, 209–10, 367 N.E.2d 661, 662–63 (1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978); *Iowa-Illinois Gas & Electric Co. v. Hoffman*, 127 Ill.App.3d 496, 82 Ill.Dec. 323, 325–27, 468 N.E.2d 977, 979–81 (Ill.App. 1984); *Commonwealth Dept. of Highways v. Scott*, 385 S.W.2d 330, 334 (Ky.1964); *Southwest Louisiana Electric Membership Corp. v. Beck*, 299 So.2d 411, 413–14 (La.App.), *writ refused*, 302 So.2d 30 (La.1974); *Central Louisiana Electric Co. v. Mire*, 140 So.2d 467, 474–77 (La.App. 1962); *Brannon v. State Roads Comm'n*, 305 Md. 793, 506 A.2d 634, 640–41 (1986); *United States Gypsum Co. v. Mystic River Bridge Authority*, 329 Mass. 130, 106 N.E.2d 677, 683 (1952); *City of Crookston v. Erickson*, 244 Minn. 321, 69 N.W.2d 909, 912–13 (1955); *Kamo Electric Cooperative, Inc. v. Cushard*, 455 S.W.2d 513, 515–16 (Mo.1970); *Dennison v. State of New York*, 22 N.Y.2d 409, 293 N.Y.S.2d 68, 69–71, 239 N.E.2d 708, 709–11 (1968); *United Power Ass'n. v. Heley*, 277 N.W.2d 262, 265 (N.D.1979); *Ohio Public Service Co. v. Dehring*, 34 Ohio App. 532, 172 N.E. 448, 449 (1929); *Hetland v. Capaldi*, 103 R.I. 614, 240 A.2d 155, 158 (1968); *South Carolina State Highway Dept. v. Touchberry*, 248 S.C. 1, 148 S.E.2d 747, 748–49 (1966); *State v. Rascoe*, 181 Tenn. 43, 178 S.W.2d 392, 395–96 (1944); *Southwestern Public Service Co. v. Vanderburg*, 581 S.W.2d 239, 245 (Tex.Civ.App. 1979); *Utah State Road Comm'n v. Miya*, 526

Second, we believe this is the better reasoned approach in terms of fairness and economic reality. *See United States v. 15.-65 Acres of Land,* 689 F.2d 1329, 1332 (9th Cir.1982), *cert. denied,* 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983). Consider the hypothetical case of a landowner who receives a bid from a private party to buy a portion of the landowner's property for a particular use. The landowner rationally will fix his selling price at an amount that will compensate the landowner not only for the portion sold, but also for any diminution in value of the remainder of his land that results from the use of the property sold, whether or not adjoining lands will suffer diminution of value as well. The buyer must pay that price to acquire the desired portion. A condemning authority should be required to compensate in like manner. On the other hand, a landowner whose property is reduced in value by the acquisition and use of adjoining land by a private party ordinarily cannot recoup this loss from the adjacent land user. Only the imposition of a duty by operation of law, *e.g.,* under the law of nuisance, can alter this result. In the absence of such a duty, the adjoining land user, having no need for any of the injured landowner's property, will pay that landowner nothing and the injured landowner has no remedy. We conclude that a condemning authority should be subject to the same burdens and benefits as a private party and that the condemning authority's liability should be no less and no greater than that of a private party in the theoretical marketplace. *See id.; State v. Rascoe,* 181 Tenn. 43, 178 S.W.2d 392, 395–96 (1944).[4]

The result reached in *State Dept. of Highways v. Davis* is not inconsistent with the rule that we adopt today. In evaluating the compensability of impairment of access to a highway in that case, we declined to adopt the very distinction between instances involving a partial taking and those that do not that was the basis of the court of appeals' opinion in *Davis* and that is central to our resolution of the present case. 626 P.2d at 665. In the present case, however, the damages to the remainder flow directly from the activities on the land condemned. In *State Dept. of Highways v. Davis,* the damages flowed from a decision of the condemning authority to limit access to a highway, which involved altering the landowners' ability to use the land that *adjoined* their property.

This distinction has been recognized as important by a number of courts and commentators that have embraced the general rule we adopt here today. These authorities have recognized that in certain situations property owners may be entitled to

P.2d 926, 929 (Utah 1974); *Housing Authority of the City of Seattle v. Brown,* 68 Wash.2d 485, 413 P.2d 635, 638 (1966); Annot., "Eminent Domain: Compensability of Loss of View From Owner's Property—State Cases," 25 A.L.R.4th 671 (1983) (and cases cited therein); Annot., "Unsightliness of Powerline or Other Wire, or Related Structure, As Element of Damages in Easement Condemnation Proceeding," 97 A.L.R.3rd 587 (1980) (and cases cited therein); 2 *Nichols on Eminent Domain,* sec. 5.14[1] at 5–208 (rev'd 3rd ed. 1985); 2A *Nichols on Eminent Domain,* sec. 6.41; 4A *Nichols on Eminent Domain,* secs. 14.-01, 14.01[2], 14.01[3], 14.02, 14.03, 14.12 at 14–280 to –289, 14.13[1]. *But see State Commissioner of Transportation v. Charles Investment Corp.,* 143 N.J.Super. 541, 363 A.2d 944, 947 n. 3 (1976), *aff'd,* 151 N.J.Super. 14, 376 A.2d 534 (App.1977) (per curiam), *aff'd,* 76 N.J. 86, 385 A.2d 1227 (1978) (per curiam); *Board of Transportation v. Bryant,* 59 N.C.App. 256, 296 S.E.2d 814, 817–18 (1982).

4. In *State Dept. of Highways v. Davis,* we stated that the "same criteria" must be used to determine damages to property as a result of loss or limitation of access when property is taken and when it is not. This is because "[a]ny other result would create serious problems of fairness to landowners similarly situated." 626 P.2d at 665. That may be true when a court is confronted with a question of impairment of access, for the reasons given in our discussion of *Davis, infra.* However, in the context of the present case, the landowner who has property taken for the purpose of the construction of a power line and who seeks compensation for damage to the remainder caused by the construction is not similarly situated with a landowner who sees a power line constructed on adjoining lands. As explained in the text, absent recognized and narrowly defined legal wrongs, such as nuisance, a landowner has no legal right and therefore no expectation to control or limit activities on lands other than his own.

only those damages to the remainder that are attributable to the use of or activity on the land that has been taken from them and not to damages resulting from the use of adjoining lands for the same project. *See, e.g., United States v. 15.65 Acres of Land,* 689 F.2d at 1332–33; *Lee County v. Exchange National Bank of Tampa,* 417 So.2d 268, 269 (Fla.App.1982); *City of Crookston v. Erickson,* 244 Minn. 321, 69 N.W.2d 909, 913 (1955); *United Power Ass'n v. Heley,* 277 N.W.2d 262, 265–66 (N.D.1979); 1 L. Orgel, *Valuation Under the Law of Eminent Domain,* secs. 54–57 (2nd ed.1953); 4A *Nichols on Eminent Domain,* secs. 14.01[2] at 14–36, 14.02 at 14–53, 14.03[1] (rev'd 3rd ed. 1985).[5] Because there is no claim in the present case that the damages suffered by the Wagners are due in part to the erection of the power line on adjoining property, we need not decide here the precise applicability and contours of this qualification of the general rule. *See generally, United States v. 15.65 Acres of Land,* 689 F.2d at 1332–33. However, the access problem presented in *Davis* should be viewed as implicating this qualification of the general rule, and thus the result reached in *Davis* is compatible with our holding in this case.

The regulation of access usually involves only the regulation of property adjoining the private landowners' property, and the nature of the access issue does not change simply because a piece of the landowners' property is also taken for use in the overall transportation scheme. We have consistently held that a property owner's access may be regulated under the police power without constituting a taking of property rights so long as there is not a "substantial

impairment" of access. *E.g., Shaklee v. Board of County Commissioners,* 176 Colo. 559, 563–64, 491 P.2d 1366, 1367 (1972); *Hayutin v. Colorado State Dept. of Highways,* 175 Colo. 83, 88–89, 485 P.2d 896, 899 (1971); *Troiano v. Colorado Dept. of Highways,* 170 Colo. at 491, 495–97, 463 P.2d at 451, 453–54; *Gayton v. Dept. of Highways,* 149 Colo. at 75–78, 367 P.2d at 900–02. In *Davis,* it was simply fortuitous that some of the landowners' property was required to create a traffic system that would limit access to the highway without substantially impairing the ability of property owners formerly possessing direct rights of access to obtain entry onto the highway. Under these circumstances, the limitation of access did not flow as a natural, necessary and reasonable result of the taking of the landowners' property but was independent and separable from that taking. We believe that by viewing the issue in *State Dept. of Highways v. Davis* as one of whether the alteration of the use of adjoining property substantially interfered with the landowners' access so as to constitute a taking of access rights and therefore require compensation, a correct and fair result was reached notwithstanding the fact that a mechanical application of the rule that we adopt today might suggest a tension between the two cases. *See State Highway Commissioner v. Easley,* 215 Va. 197, 207 S.E.2d 870, 874–75 (1974) (relied on by us in *Davis* and analyzing compensability of limitation of access to a highway in the same manner as *Davis* ). *See also Triangle, Inc. v. State of Alaska,* 632 P.2d 965, 967–68 (Alaska 1981) (following *Davis* ).

---

**5.** The facts of *Lee County v. Exchange National Bank of Tampa,* 417 So.2d 268 (Fla.App.1982), are illustrative of this concept. In that case, the county condemned a small portion of land held by the bank as a trustee as part of the land required for a new airport. No use was planned for the portion taken from the bank except as part of the outer edge of a buffer zone around the airport. Thus, the use of the taken portion would have little or no impact, by itself, on the value of the remainder of the bank's property. However, the use of the adjoining lands for airport operations would have a signif-

icantly adverse effect on the market value of the remainder of the bank's property. *Id.* at 268–69, 271–72. The Florida District Court of Appeal reversed an award to the bank for damage to the remainder on the ground that the bank was not entitled to recover for damage caused by the use of adjoining lands even though the partial taking was for use as part of the same airport project. The court concluded that damages resulting from the airport use on adjoining lands were severable from any damages flowing from the use of the land actually taken from the bank. *Id.* at 269–72.

For the foregoing reasons, we hold that when a portion of a parcel of land is taken from a property owner in a condemnation proceeding, that landowner is entitled to recover all damages that are the natural, necessary and reasonable result of the taking, as measured by the reduction in the market value of the remainder of the property. The property owner is entitled to present any relevant evidence concerning diminution of market value caused by the taking. If the evidence supports a finding that a diminution of market value has occurred, compensation must be awarded. In the present case, the district court did not err in admitting evidence of aesthetic damage and loss of view that resulted in a reduction in the value of the remainder of the Wagners' property.

The judgment of the court of appeals is affirmed.

ROVIRA, J., dissents.

ERICKSON and VOLLACK, JJ., join in the dissent.

ROVIRA, Justice, dissenting:

The requirement that compensable damage to a property owner must be different in kind from injury suffered by the general public runs consistently through our prior case law on eminent domain. *See, e.g., Troiano v. Colorado Dep't. of Highways,* 170 Colo. 484, 500, 463 P.2d 448, 455–56 (1969) (loss of view caused by construction on adjoining property held noncompensable); *Lavelle v. Town of Julesburg,* 49 Colo. 290, 112 P. 774 (1911) (condemnee denied recovery for injury to his remainder for annoyance and inconvenience suffered by the general public); *Gilbert v. Greeley, S.L. & P. Ry. Co.,* 13 Colo. 501, 22 P. 814 (1889) (nonadjoining owner denied compensation for obstruction of public street by a railroad crossing). The majority now overrules *Lavelle* and holds that this requirement "has no validity ... when the reduction in property value results from a taking of a portion of land held by the property owner." Majority op. at 700. It further concludes that this exception to the general damage/special damage distinction is not inconsistent with our holding in *State Dep't of Highways v. Davis,* 626 P.2d 661 (1981). Majority op. at 701. I cannot agree, for I see no justification for overruling *Lavelle* and no way in which today's holding can be reconciled with *Davis.* Moreover, I believe the result reached by the majority, and applied today in this case, *Bement v. Empire Electric Ass'n, Inc.,* 728 P.2d 706, and *Herring v. Platte River Power Authority,* 728 P.2d 709, is fundamentally inequitable and will produce substantial difficulties in future cases. I therefore respectfully dissent.

Only five years ago, in *Davis,* we concluded that resolution of the question of whether landowners could recover for impaired access to the remainder of their property requires a determination of "whether the recovery of damages for impairment or limitation of access depends on whether part of the abutting landowner's property has been taken." 626 P.2d at 664. Responding to this question, we stated that:

The rationale for denying compensation for limitation or loss of access manifested by circuity of route is that the inconvenience suffered by the landowner is identical in kind to that suffered by the community at large, and the landowner's inconvenience is only greater in degree.

In our view, whether or not property is actually taken is immaterial to the issue of damages to the remainder of the property for loss or limitation of access. The same criteria must be used in both instances. Compensation is only required when the remainder is damaged by a substantial limitation or loss of access. Any other result would create serious problems of fairness to landowners similarly situated.

*Id.* at 664–65 (citations omitted).

*Lavelle,* which involved a property owner's claim for damage to his right of ingress and egress over adjacent land and damage to his property from noise, smoke, noxious vapors and increased fire danger, also holds that the special damage require-

ment applies where a property owner claims injury to his land:

It is clear that damages for noise, smoke, vapors and increased dangers from fire were not proper to consider. This inconvenience and injury would be common to all other property owners adjoining or adjacent to the power plant. *The owner of property condemned is not entitled to recover damages to the residue for annoyance and inconvenience suffered by the general public.* The damage to such residue is limited to some right or interest therein enjoyed by the owner, and not shared or enjoyed by the public generally.

.... The rule ... as applicable to this case is, that if several contiguous tracts in realty constitute one entire parcel used for one general purpose by the common owner, *the particular and special injury* which will result to the part not taken should be determined and compensation made accordingly.

49 Colo. at 300–01, 112 P. at 778 (emphasis added) (citations omitted).

The majority discards *Lavelle* without explanation or justification, *see* majority op. at 700, and it attempts to fit *Davis* within its rule under the qualification that "only those damages to the remainder that are attributable to the use of or activity on the land that has been taken" may be recovered. Majority op. at 701–702. However, nothing in the language of *Davis* supports the conclusion that the question of whether the limitation of access flowed from taken property or adjoining property played any part in the outcome of that case. To the contrary, we held that "whether or not property is actually taken is immaterial" to the determination of whether a landowner is entitled to compensation for diminished access. 626 P.2d at 665. *Davis* involved the taking of a portion of the property owner's land for a frontage road. Had *Davis* actually represented a rule allowing recovery for loss of access, a kind of injury that is also suffered by the general public, *Troiano*, 170 Colo. at 500–01, 463 P.2d at 455–56, the fact that a

condemnee's land was taken would hardly have been "immaterial." Rather, under the rule announced by the majority today, the fact of the taking would have *compelled* recovery *unless* the loss of access was not the "natural, necessary and reasonable result of the taking." Majority op. at 703. We would then have had no choice but to address in *Davis* the question of whether the impairment of access resulted from the taking or from some other activity. We made no such determination.

*Davis* and *Lavelle* are both clearly incompatible with the majority's conclusion that, when property is taken under eminent domain, a landowner "is entitled to recover all damages to the remainder that are the natural, necessary and reasonable result of the taking...." Majority op. at 703. Those injuries that a landowner shares with the public at large, including impairment of access, *Davis*, and impairment of view, *Troiano*, are simply not compensable, regardless of whether they occur to the remainder left by a taking or to land that merely adjoins condemned property. *Davis; Lavelle; see also Department of Public Works and Bldgs. v. Bloomer*, 28 Ill.2d 267, 191 N.E.2d 245, 249 (1963); *Illinois Power & Light Corp. v. Barnett*, 388 Ill. 499, 170 N.E. 717, 719 (1930).

The fact that the majority of jurisdictions have declined to apply the general damage/special damage distinction to damage to remaining land where part of a parcel is taken, majority op. at 700, does not justify a contrary result. In citing 2A P. Nichols, *The Law of Eminent Domain* § 6.41 (J. Sackman rev'd 3d ed. 1985) (*Nichols*), as illustrative of the rule in other jurisdictions, majority op. at 700 n. 3, the majority fails to acknowledge that the same section of *Nichols* notes that *Davis* amounts to a rejection of the majority rule. *See* 2A *Nichols* § 6.41 at 6–339 n. 3; *see also Triangle, Inc. v. State*, 632 P.2d 965, 968 (Alaska 1981) (quoting *Davis*, 626 P.2d at 665) (*Davis* relied on in concluding that awarding compensation for reduced highway access resulting from a partial taking would "create serious problems of fairness

to landowners similarly situated."); *id.* at 672 (Connor, J., dissenting in part) (noting that *Davis* is contrary to the majority rule). Where we have adopted a rule of law in our prior cases, we are not obliged to reject that rule simply because we discover that it is disfavored in other jurisdictions.

I reject the majority's exception to the general damage/special damage distinction not only because I believe that we are bound by our decisions in *Davis* and *Lavelle*, but also because I am convinced that this exception will result in substantial inequity. The rule announced today creates an arbitrary distinction between an owner whose land is in part taken and one whose land is not taken at all. If two individuals own adjoining similar tracts and a power line, railroad, or highway is constructed in such a way as to take a few inches off one tract and to pass just outside of the other, the owner of the first tract under today's decision will recover full compensation for the depreciation in the value of his land caused by damage, such as impairment of view, that is experienced to a varying degree by his neighbor. Under *Troiano*, the owner of the second tract, which receives almost precisely the same injury, will recover nothing. *See Walker v. Old Colony and Newport Ry. Co.*, 103 Mass. 10, 4 Am.Rep. 509, 512 (1869) (noting this discrepancy in compensation); *see also* 2A *Nichols* § 6.27[3], at 6–203. Despite these very different results, it is apparent that the landowner who has been compensated for land actually taken is in the same position as his neighbor with regard to any injury to his remaining land. One commentator, noting the discrepancy caused by this exception to the special damage requirement, remarked that:

Theoretically, if the objective of the eminent domain procedure is to spread throughout the community the costs and negative impact of public improvements ... a landowner should not be awarded consequential damages because a portion, however small, of his land was taken, where his neighbor, suffering the same loss, receives none because no portion of his land was actually taken.

Annot., 59 A.L.R.3d 488, 492–93 (1974); *see also* 2A *Nichols* § 6.27[3], at 6–203; *Triangle v. State*, 632 P.2d at 968.

We recognized the sound rationale for the special damage requirement over a century ago when we adopted the general damage/special damage distinction in *City of Denver v. Bayer*, 7 Colo. 113, 2 P. 6 (1883). In *Bayer*, which involved damage caused by construction of a railroad on a street in which the plaintiff arguably possessed an easement of access, we concluded that:

The railroad is a public benefit. It is generally of great advantage to the town or city to or through which it is built and operated, and for any injury or annoyance occasioned thereby which an adjoining owner shares in common with the general public, he ought not to recover; but for those damages which are peculiar to him, which affect his property and impair its value without injuring that of his neighbor, he ought, in justice, to receive compensation.

7 Colo. at 118, 2 P. at 9–10. The members of the public who benefit from a public improvement, such as the powerline at issue here, must also share the burden to the community that inevitably accompanies such improvements. The rule adopted by the majority today departs from this rationale by unfairly singling out for extra compensation those landowners who are "lucky" enough to have had land taken from them. I am unable to join in such an inequitable result, and would therefore reverse the judgment of the court of appeals.

Finally, I note that in its attempt to reconcile today's decision with *Davis*, the majority has set forth a test fraught with complications that will both tax the resources of our trial courts and discourage settlement of compensation claims. By allowing compensation for all types of injury to the remainder left behind by a partial taking, but then leaving open "the precise applicability and contours of [the] qualification" that recoverable injuries must be "the natural, necessary and reasonable result of

the taking," majority op. at 702, 703, the majority has asked our trial courts to make a complex factual determination without giving them any guidance in how to do so. Where, for example, multiple tracts of land are taken for a public purpose, as they often are in eminent domain proceedings, the majority's test will require a determination of whether and to what extent a landowner's injuries are caused by activities performed on land taken from him, as opposed to activities that take place on land taken from others. Recognizing the difficulties involved in resolving such a question, one commentator has pointed out that:

As a practical and theoretical matter, it would appear to be often clearly impossible to separate the effect on a landowner's remaining property of the use placed upon the land taken from him, as distinguished from the use placed upon the land of other adjacent owners.

Annot., 59 A.L.R.3d 488, 493 (1974) (footnote omitted). This factual uncertainty will undoubtedly discourage settlement by making it difficult for parties to estimate the total value of compensable damage. Both the uncertainty and the possibility of erroneous findings would be eliminated by adoption of either a rule holding general damage that a condemnee shares with the general public to be noncompensable or a rule holding that a condemnee may recover the entire diminution in the value of his remainder. While I favor the former rule for the reasons set forth above, even the latter rule would produce less vexatious results than the hybrid approach adopted by the majority.

I am authorized to say that Justice ERICKSON and Justice VOLLACK join in this dissent.