CITY OF CROOKSTON v. KENSEL S. ERICKSON
AND OTHERS.
VIRGIL ELLIOT ERICKSON AND OTHERS,
APPELLANTS.[1]

April 15, 1955.

Nos. 36,313, 36,314, 36,315.

---

[1] Reported in 69 N. W. (2d) 909.

*H. O. Chommie,* for appellants.
*L. A. Erickson,* for respondent.

CHRISTIANSON, JUSTICE.

This case presents separate appeals by property owners from judgments entered pursuant to the jury's award of damages in condemnation proceedings instituted by the city of Crookston. The land

condemned is located just outside the southern limits of Crookston and was acquired as the site for a proposed new sewage treatment and disposal plant for that city. We are concerned here mainly with three parcels of land which for convenience will be referred to as tracts A, B, and C.[2]

Tract A is heavily wooded land bounded on the west by the Red Lake River and contains approximately nine acres. The city condemned the fee to the whole of this tract and, although the amount of the jury's award therefor is questioned, its primary importance insofar as these appeals are concerned is that all the structures which the city proposes to erect in connection with the disposal plant are to be located thereon. Tract A was owned by Virgil Erickson.

Tract B, which was owned by Abel and Hulda U. Erickson, is a rectangular parcel containing approximately 15.17 acres. The northwest corner of tract B juts into tract A, thereby forming part of the south and part of the east boundary of tract A. Tract B extends east toward Minnesota street and its eastern boundary abuts onto Minnesota street. The city condemned the fee to approximately six and one-half acres of tract B. We will refer to the portion condemned by the city as tract B-1 and the remaining portion of tract B, consisting of approximately eight and seven-tenths acres, as tract B-2. Tract B-1 is the west portion of tract B and contains the corner which juts into tract A. If the present plans are carried out, none of the structures comprising the sewage disposal plant will be located on tract B-1. It is conceded that the highest and most profitable use of tract B is for suburban residential development.

Farther to the east, and across Minnesota street from tract B, lies tract C, which is also owned by Abel and Hulda U. Erickson. It consists of 7.28 acres. The west portion of tract C which fronts on Minnesota street is high ground, but the east part slopes down to the Red Lake River and often floods in the spring. The city condemned the fee to a strip 33 feet wide in the east or low portion of

[2]Our designation of the parcels of land involved on appeal is not the same as that used at the trial.

tract C to acquire a right of way through which to run the main sewer line leading to the treatment and disposal plant to be erected on tract A. The sewer line is laid under the surface but there are manholes at regular intervals. The Ericksons contend that the highest and most profitable use of tract C is for suburban residential development. However, this is denied by the city.

The disposal plant structures, all of which are to be located on tract A, will be built partly above and partly below the ground level. The portion of the structures above ground level will not rise above the level of the treetops. Stated briefly, the function of the treatment and disposal plant will be to accept raw sewage from the main sewer line running beneath the strip which the city condemned in tract C. The solids will be separated from the liquids and, after passing through a drying process, will be sold for fertilizer and hauled away in trucks. The liquids will be purified and discharged into the Red Lake River.

The principal question presented for decision is the correctness of the position adopted by the trial court that the reduction in the market value of the uncondemned portions of tracts B and C caused by the mere proximity of the sewage treatment and disposal plant is not a factor for the jury's consideration in awarding damages. Some of the assignments of error deal with the trial court's refusal to permit expert witnesses to testify concerning the reduction in market value of tract B due to the psychological effect upon potential buyers for residential purposes created by the proximity of the sewage treatment plant. Others challenge the court's refusal to instruct the jury that it should consider the reduction in value due to psychological factors in making its award.

■ Minn. Const. art. 1, § 13, provides:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

M. S. A. 117.02, subd. 2, defines "taking" by condemnation proceedings in this state to include "every interference, under the right of eminent domain, with the ownership, possession, enjoyment, or *value of private property*." (Italics supplied.) This court has previously

held that "interference with the value of property" is broad enough to include the erection of structures which may later in fact reduce the value of ownership or enjoyment of property. State, by Peterson, v. Bentley, 231 Minn. 531, 543, 45 N. W. (2d) 185, 192; see, Burger v. City of St. Paul, 241 Minn. 285, 294, 64 N. W. (2d) 73, 78. However, we find no prior decision of this court which has considered the precise question of consequential damages presented here.

■ At the outset, it might be well to examine a few of the basic rules governing the compensability of so-called "consequential" damage. Where no part of an owner's land is taken but, because of the taking and use of adjoining property, damage is caused to an owner's land, the damage is not compensable unless the consequential injury is peculiar to the adjoining owner's property and not of a type suffered by the public as a whole. Locascio v. N. P. Ry. Co. 185 Minn. 281, 240 N. W. 661; Vacation of Part of Town of Hibbing, 163 Minn. 439, 204 N. W. 534; 205 N. W. 613; see, Feltz v. Central Nebraska Public Power & Irr. Dist. (8 Cir.) 124 F. (2d) 578. However, in cases where there is a partial taking, the injured owner is not required to show that the injury is peculiar to his remaining property. It is sufficient that the damage is shown to have been caused by the taking of part of his property even though it is damage of a type suffered by the public as a whole. State v. Rascoe, 181 Tenn. 43, 178 S. W. (2d) 392; see, Lamont v. West Penn Power Co. 300 Pa. 78, 84, 150 A. 155, 157; 4 Nichols, Eminent Domain (3 ed.) § 14.1. This is true even where the claimed damage to the remaining property is due to the *use* to which the property taken will be devoted by the taker. However, an important qualification of this rule must here be noted. Recovery is generally limited solely to the damage caused by the taker's use of the land acquired from the owner of the remainder area. Stated in another way, the owner of the remainder area is not ordinarily entitled to recover for damage caused his remaining land by the taker's use of property acquired from adjoining landowners even though his and all property taken from others is used to further the same project. Campbell v. United States, 266 U. S. 368, 45 S. Ct. 115, 69 L. ed. 328. This has been the rule in Minnesota. Adams v.

Chicago, B. & N. R. Co. 39 Minn. 286, 39 N. W. 629, 1 L. R. A. 493.

■ However simple this general rule appears on the printed page, its application to specific fact situations presents grave problems. It has been characterized by one commentator on the subject as an "attempt to separate the inseparables." 1 Orgel, Valuation Under Eminent Domain (2 ed.) § 56, p. 263. An illuminating illustration of this problem can be found in the facts now before us. It appears that none of the buildings which will constitute the sewage treatment plant will be erected on tract B-1, but instead will be confined to tract A. Does this compel the conclusion that the claimed reduction in the market value of tract B-2 is attributable solely to the use of tract A, and that, as a matter of law, tract B-2 has not been damaged in this respect by the taking and use of tract B-1? We think not. Certainly "use" in this context implies more than actual construction on the condemned tract. It can be argued with equal conviction that the acquisition of tract B-1 was considered desirable by the city in order to provide a proper "site" for the sewage plant and that tract B-1 is therefore just as essential to the project as the tract upon which the structures will be located. Furthermore, there is nothing in the record to indicate any agreement on the part of the city that no buildings or structures will be erected on tract B-1 in the future.

An examination of the cases applying the rule separating the injury to the remainder area between that caused by the use of land taken from the owner of the remainder tract and that caused by the use of land taken from others fails to dissuade us from the view that such apportionment can seldom be realistically made. In addition the attempt to apportion such damage has not met with universal acceptance.[3] In Haggard v. Independent School Dist. 113 Iowa 486, 85 N. W. 777, the facts presented a problem similar to that which is now before us. The court discussed different pos-

---

[3]In considering the rule of the Adams case, this court in an opinion written by Mr. Justice Mitchell in Lamm v. Chicago, St. P. M. & O. Ry. Co. 45 Minn. 71, 78, 47 N. W. 455, 457, 10 L. R. A. 268, said: "The only serious objection to it (and we recognize its force) is the difficulty in applying the rule adopted by us as to the measure of damages."

sible rules governing the award of consequential damages and with reference to the apportionment rule made the following observation (113 Iowa 494, 85 N. W. 780) :

"* * * But this rule is too difficult of application to be of any practical value. Who can say in this case, for instance, how much the inconvenience due to the proximity of the school building on the balance of this block would be increased by the fact that the half lot in question was included in the school house site?"

The court then awarded the entire amount of damage caused to the remainder area, even though such damage emanated in part from other land. In Andrews v. Cox, 129 Conn. 475, 29 A. (2d) 587, a small triangular area was taken from the corner of a lot for the purpose of constructing a highway embankment. While not altogether disapproving the apportionment rule, the court permitted recovery for damage to the remaining property caused by the whole improvement. We think the test adopted in the Andrews case is the proper one to be applied in a case such as this (129 Conn. 482, 29 A. [2d] 590) :

"* * * where the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land. * * * Whether such a situation exists or not would often, perhaps usually, present a question to be determined by the trier; but the case before us falls so clearly within the principle that we may apply it as a matter of law."

We therefore modify the rule of the Adams case to the extent that, where a part of an owner's land is taken for a public improvement such as this, and the part taken "constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put," the owner is entitled to recover the full damage to his remaining property due to such public improvement, even though portions of the public improvement are located on land taken from surrounding owners. The determination of whether the part

taken constitutes "an integral and inseparable part" of the whole improvement ordinarily is a question for the trier of the fact, and where the use of the part taken is found to be separable, consequential damages should be allowed only for the use of the part taken, in accordance with the Adams case. It follows that the trial court erred in rejecting the offered expert testimony concerning the reduced market value of tract B-2 and in refusing to instruct the jury that, if they found the use of tract B-1 was an integral and inseparable part of the sewage disposal plant project, they should consider the effect of the entire disposal plant in arriving at tract B-2's reduced value.

■ Appellants contend that since a portion of tract C was condemned to provide a right of way for the sewer pipe leading to the sewage disposal plant they likewise are entitled to a new trial as to tract C notwithstanding the fact that there is nothing in the record to support a conclusion that the market value of tract C was lowered by reason of the proximity of the disposal plant and no evidence was offered at the trial to this effect. They assert, however, that in view of the trial court's position with respect to tract B, they did not pursue the matter further with respect to tract C but have not abandoned their claim for this type of consequential damage to this tract.

As previously noted a strip 33 feet wide in the east portion of tract C was condemned to acquire a right of way through which to run the main sewer line leading to the sewage treatment and disposal plant to be erected on tract A. Although the sewer line is to be laid underground there will be manholes at regular intervals. It is our opinion that, as a matter of law, the use of the land taken on tract C does not constitute an integral and inseparable part of the sewage disposal plant project and therefore any depreciation in the market value of tract C resulting from the mere proximity of the disposal plant and the contemplated user thereof is not recoverable. Cf. Horton v. Colwyn Bay and Colwyn Urban Council [1908] 1 K. B. 327.

■ Since there will have to be a new trial with respect to tract B, we will briefly consider appellants' contention that it was error to submit the question of unitary use to the jury with respect to the

condemned and uncondemned portions of tract B. As previously noted, the city conceded that the highest and best use of tract B-1 and tract B-2 was that of suburban residential development. The existence of a unitary use giving rise to a right to recover consequential damages to the uncondemned portion of the unit is generally a question of fact. As this court said in Peck v. Superior Short Line Ry. Co. 36 Minn. 343, 345, 31 N. W. 217, 218:

"We do not undertake the perilous task of formulating a *specific* and *exact* rule to govern all instances in which the question of entirety is involved. The question is probably so much one of fact as to make it impracticable to lay down any such rule which will not be a hindrance, rather than a help. As with respect to questions of negligence, each case, as it comes up, must rest largely upon its own facts."

We cannot say on the record before us that the trial court erred in refusing to rule as a matter of law that tract B constituted a single unit. Considerable testimony was introduced by both sides dealing with the suitability of tract B for development as a single unit. While the differences in the opinions expressed by the witnesses may not have been great, they were sufficient to create a fact question under the circumstances presented.

We find no merit in appellants' contention that the damages awarded by the jury for tracts A and C are so inadequate as to appear to have been given under the influence of passion and prejudice. No useful purpose would be served by detailing the evidence in this respect. It is sufficient to state that although the damages awarded by the jury for tracts A and C are not liberal they are not so inadequate as to justify our granting a new trial. Appellants' further assignments of error with respect to tracts A and C have been carefully considered but found not to present grounds for reversal.

For the foregoing reasons the judgments affecting tracts A and C should be affirmed and the judgment as to tract B should be reversed and a new trial granted.

Cases No. 36313 and 36315 affirmed.

Case No. 36314 reversed.