909 P.2d 25

121 N.M. 144

**CITY OF ALBUQUERQUE, a municipal corporation, Plaintiff–Appellee,**

v.

**WESTLAND DEVELOPMENT CO., INC., a New Mexico Corporation, Defendant–Appellant.**

No. 15667.

Court of Appeals of New Mexico.

Oct. 28, 1995.

Robert M. White, City Attorney, Robert I. Waldman, Edward R. Pearson, Assistant City Attorneys, Albuquerque, for Plaintiff–Appellee.

Robert S. Simon, Albuquerque, Richard L. Russell, Santa Fe, for Defendant–Appellant.

## OPINION

HARTZ, Judge.

1. Westland Development Company, Inc., (Westland) appeals a district court judgment awarding it $75,000 as compensation for a taking by the City of Albuquerque (City) of 22.788 acres out of a 14,977.21 acre parcel owned by Westland. The parcel is on the west side of Albuquerque south of Interstate 40 near the Paseo del Volcan exit to Interstate 40. The portion taken was a 60–foot-wide right of way for an access road leading from the frontage road on the south side of Interstate 40 to the Cerro Colorado Landfill, which adjoins the southern portion of the western border of Westland's parcel. The frontage road and landfill were already City-owned property. To prepare for the operation of the landfill, the City not only built the access road through Westland's parcel but also upgraded the frontage road on the northern boundary of the parcel from a gravel road to a two-lane asphalt highway. During normal operation of the landfill a steady flow of garbage trucks passes along the

frontage road and then down the access road to the landfill. The following diagram shows the locations of the features that are relevant to this decision.

2. The trial judge instructed the jury that Westland was entitled to damages for the value of the right of way taken from Westland and for any reduction in the value of the remainder of Westland's parcel "resulting from the use by vehicles of the Cerro Colorado Landfill in traversing the road constructed on the condemned property." Westland's principal contention on appeal is that the trial judge improperly limited the damages that it could recover for the reduction in value of the uncondemned portion of its parcel. According to Westland, not only should it be entitled to the reduction in value of the uncondemned portion arising from the use of the access road, but also it should be entitled to any reduction in value caused by the proximity of the landfill and the increased use of the frontage road. Westland argues that the opening of the landfill, the building of the access road, and the upgrading of the frontage road are all part of one project, the Cerro Colorado Landfill project (the Project), and it is entitled to compensation for the reduction in the value of its uncondemned land caused by the entire Project, not just for damages caused by use of the access road. In addition, Westland argues that the following errors require reversal of the judg-

ment: (1) the trial judge violated the pretrial order in allowing the City to introduce certain evidence, (2) the trial judge misled Westland into limiting the testimony it presented, (3) the trial judge denied Westland due process of law by not allowing two Westland directors the right to attend the entire trial, (4) the trial judge improperly refused to permit a member of the Westland board to testify regarding damages, (5) the trial judge improperly refused to permit Westland to introduce impeachment evidence on cross-examination of City witnesses, and (6) the trial judge improperly excluded photographs and denied a jury view. We affirm.

## I. MEASURE OF DAMAGES FOR TAKING

3. The City commenced this case by filing a verified complaint for condemnation pursuant to the New Mexico Eminent Domain Code, NMSA 1978, § 42A–1–1 through –33 (Repl.Pamp.1994). Under the New Mexico Constitution, "Private property shall not be taken or damaged for public use without just compensation." N.M. Const. art. II, § 20. Section 42A–1–26 sets forth the measure of just compensation that should be awarded

when only a portion of a parcel has been taken. It states:

> In any condemnation proceeding in which there is a partial taking of property, the measure of compensation and damages resulting from the taking shall be the difference between the fair market value of the entire property immediately before the taking and the fair market value of the property remaining immediately after the taking. In determining such difference, all elements which would enhance or diminish the fair market value before and after the taking shall be considered even though some of the damages sustained by the remaining property, in themselves, might otherwise be deemed noncompensable. Further, in determining such values or differences therein, elements which would enhance or benefit any property not taken shall only be considered for the purpose of offsetting any damages or diminution of value to the property not taken.

Section 42A–1–26 simply codifies what is required to satisfy the constitutional command of "just compensation." *See State ex rel. State Highway Comm'n v. Hesselden Inv. Co.,* 84 N.M. 424, 426, 504 P.2d 634, 636 (1972), *overruled on other grounds by County of Dona Ana ex rel. Board of County Commr's v. Bennett,* 116 N.M. 778, 867 P.2d 1160 (1994). We therefore may look for guidance to courts and other authorities who have construed requirements of "just compensation" in various state constitutions and in the Fifth Amendment to the United States Constitution.

■ 4. The apparent simplicity of the statutory formula—"the difference between the fair market value of the entire property immediately before the taking and the fair market value of the property remaining immediately after the taking"—is deceptive. The "before and after" formulation of the rule establishes the temporal component of the calculation—the moment for which the calculation is to be made, *see generally Bennett*—but there is also a "causation" compo-

nent. The necessity of the causation component becomes apparent when one considers how a purely temporal before-and-after calculation—one with only a temporal component—would work in practice. The result would likely be an award of little or no compensation for diminution of value of the uncondemned portion of the property. To establish the fair market value of the uncondemned portion immediately before the taking, one would estimate what price prospective purchasers would have offered at that time. But such hypothetical purchasers would necessarily take into account that a condemnation would occur soon (or immediately) after the purchase and that the value of the remaining property would be enhanced or diminished by the use to be made of the portion taken. Thus, the fair market value of the uncondemned portion would be essentially the same immediately before and immediately after the taking, because immediately before the taking the prospective purchaser would know with virtual certainty that a taking would be consummated.[1]

5. What is missing from a purely temporal before-and-after rule is the recognition that just compensation requires payment for the diminution in property value *caused* by the taking. To compensate justly for the taking, the "before" value must be calculated as if no taking were to take place and the "after" value calculated as if the taking had already occurred. Then the calculation computes the diminution in value caused by the condemnation. Thus, "the difference between the fair market value of the entire property immediately before the taking and the fair market value of the property remaining immediately after the taking" is shorthand for "the difference between the fair market value of the entire property immediately before the taking (assuming that the prospective condemnation is not taken into consideration) and the fair market value of the property remaining immediately after the taking (taking the condemnation into consideration)."

---

1. In this discussion we ignore the possibility that the pre-condemnation prospective purchaser would include in the valuation of the property the right to compensation from the government for diminution in the value of the remainder of the property. To take that possibility into account would be to introduce a circularity of reasoning, because the amount of compensation depends upon what a prospective buyer would pay.

■ 6. The above discussion of the meaning of the statutory language may seem elementary. It leads, however, to the heart of the dispute between Westland and the City. When determining how much the value of the property has been affected by the condemnation, what features of the condemnation are to be taken into consideration? In other words, what causes of loss of value are compensable? Is the sole compensable cause the loss of ownership of the portion of the parcel that is condemned? Does the comparison in values also take into consideration the effect of the use to be made of the condemned portion? Or does one consider the effect of the entire project of which the condemnation is a part? Translating these questions to the present case, should the award to Westland be the decrease in value of its parcel resulting (1) solely from the loss of the strip to be used as the right of way for the access road, (2) from the loss of the strip plus the use of the strip for traffic, including garbage trucks, or (3) from the loss of the strip plus the impact of the entire Project, including traffic· on the access road, increased traffic on the frontage road, and damages from proximity of the landfill?

■ 7. New Mexico case law answers the questions in part. In *City of Santa Fe v. Komis*, 114 N.M. 659, 845 P.2d 753 (1992), our Supreme Court considered an award to the owner of property in Santa Fe which was partially condemned for construction of a highway to transport nuclear waste to the Waste Isolation Pilot Project near Carlsbad. The Court held that the property owner should be compensated for the diminution in value of the uncondemned land caused by public fear of the use of the highway to transport nuclear waste, regardless of whether the fear was well-founded. *Id.* at 661, 845 P.2d at 755. Although the opinion did not address specifically the issues that arise on this appeal—the focus of the discussion was whether fear that causes a diminution in value must be well-founded—the holding clearly implies that compensation must be paid for a diminution in value of the remaining land caused by the use of the taken portion. We conclude that the trial judge in this case correctly gave the jury an instruction that Westland was entitled to compensa-

tion for the loss in value caused by traffic along the access road adjacent to its remaining land, an instruction that the City has not challenged on appeal. Westland was entitled to at least that much compensation.

8. *Komis*, however, does not completely answer our questions. It did not address whether it is appropriate to take into account a reduction in value of the uncondemned portion caused by activities that do not occur on the condemned portion but result from the project of which the condemnation is a part. Thus, we look to authority elsewhere.

9. Examination of the case law from other jurisdictions is particularly appropriate in this context. There is no *a priori* formula to apply in determining what factors should be considered in awarding compensation for a taking of private property. As the very term "just compensation" suggests, the touchstone is justice, or fairness. To avoid reliance on our personal, perhaps idiosyncratic, notions of justice and fairness, we should test our views against the work of other courts that have confronted similar issues. Moreover, to the extent that just-compensation doctrine takes into account utilitarian considerations—such as the desirability of clear rules (to avoid devoting excessive time, energy, and money to resolution of disputes) and maintaining the morale of property owners (so that a fear of governmental expropriation does not discourage investment and development), *see generally* Frank I. Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law*, 80 Harv.L.Rev. 1165, 1208–18 (1967)—the practical insights and experience of other jurisdictions may be of great value.

■ 10. Our research compels the conclusion that in this case damages from the proximity of the landfill and from increased traffic on the frontage road are not compensable. The leading case on the subject is *Campbell v. United States*, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328 (1924). It is generally viewed as permitting consideration of only those damages to the uncondemned portion of a parcel caused by the use of the condemned portion. The United States Govern-

ment had condemned 1300 acres to be the site for a nitrate plant. Campbell sought compensation for the taking of 1.81 acres of his land as part of the site. The unanimous Court held:

The rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking.

*Id.* at 372, 45 S.Ct. at 117. The Court explained:

The land taken from plaintiff was not shown to be indispensable to the construction of the nitrate plant or to the proposed use of the other lands acquired by the United States. The damages resulting to the remainder from the taking of a part were separable from those caused by the use to be made of the lands acquired from others. The proposed use of the lands taken from others did not constitute a taking of his property. Plaintiff had no right to prevent the taking and use of the lands of others; and the exertion by the United States of the power of eminent domain did not deprive him of any right in respect of such lands. And, if the land taken from plaintiff had belonged to another, or if it had not been deemed part and parcel of his estate, he would not have been entitled to anything on account of the diminution in value of his estate. It is only because of the taking of a part of his land that he became entitled to any damages resulting to the rest. In the absence of a taking, the provision of the Fifth Amendment giving just compensation does not apply; and there is no statute applicable in this case that enlarges the constitutional right. If the former private owners had devoted their lands to the identical uses for which they were acquired by the United States or to which they probably will be put, as found by the court, they would not have become liable for the resulting diminution in value of plaintiff's property. The liability of the United States is not greater than would be that of the private users.

*Id.* at 371–72, 45 S.Ct. at 116–17 (citation omitted). The Court distinguished some earlier state cases on the ground that in those cases it had been "impossible separately to ascertain [ (1) ] the damages caused to the remainder of the owner's tract by the taking and proposed use of a part of it [and (2) the damages caused by the use made of lands acquired from others]." *Id.* at 372, 45 S.Ct. at 117. Most jurisdictions that have considered the matter apply the *Campbell* rule. *See, e.g., 8,960 Square Feet, More or Less v. State, Dep't of Transp. & Pub. Facilities,* 806 P.2d 843, 846 (Alaska 1991); *Utah Dep't of Transp. v. D'Ambrosio,* 743 P.2d 1220 (Utah 1987). *See generally* Annotation, *Compensation for Diminution in Value of the Remainder of Property Resulting from Taking or Use of Adjoining Land of Others for the Same Undertaking,* 59 A.L.R.3d 488 (1974).

■ 11. Under the *Campbell* rule Westland is not entitled to compensation for any reduction in the value of the uncondemned portion of its parcel resulting from the increased use of the frontage road or the proximity of the landfill, because the frontage road and the landfill are not on land acquired from Westland by condemnation. Moreover, the logic underlying the *Campbell* rule supports the denial of such compensation in this case. An owner's property right to land does not encompass the right to control the use of land owned by others. Only in the exceptional case is a property owner entitled to damages or injunctive relief because of a reduction in the value of land caused by activity on a neighbor's land. *See Scott v. Jordan,* 99 N.M. 567, 661 P.2d 59 (Ct.App.1983). In other words, the neighbor's activity, even though it may reduce the value of the owner's land, ordinarily violates no property right of the owner. But if the activity violates no property right of the owner, then the government owes the owner no compensation for engaging in the activity. *See Aguayo v. Village of Chama,* 79 N.M. 729, 449 P.2d 331 (1969) (discussing when damages are recoverable because of nearby public sewage disposal plant). As the United States Supreme Court recently stated, the law governing takings "has traditionally been guided by the understandings of our citizens

regarding the content of, and the State's power over, the 'bundle of rights' that they acquire when they obtain title to property." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1026–27, 112 S.Ct. 2886, 2899, 120 L.Ed.2d 798 (1992). *Campbell* expressed the proposition as follows:

> If the former private owners had devoted their lands to the identical uses for which they were acquired by the United States or to which they probably will be put, as found by the court, they would not have become liable for the resulting diminution in value of plaintiff's property. The liability of the United States is not greater than would be that of the private users.

266 U.S. at 371–72, 45 S.Ct. at 116–17.

■ 12. Turning to the facts of this case, Westland does not contend in its brief in chief that even if no portion of its parcel had been condemned, it would still be entitled to compensation from the City for damages arising from the proximity of its land to the landfill or from the increased traffic on the frontage road. The failure to pursue this contention appears sound. The City already owned the Cerro Colorado Landfill. If it had acquired access to the site via a roadway on land not condemned from Westland, Westland would ordinarily have no claim for compensation, *see Aguayo*, even though any reduction in the value of Westland's parcel caused by the proximity of the landfill would be the same regardless of the location of the access road. (As did the trial judge, we distinguish (1) damage due to proximity of the landfill from (2) damage due to traffic on the access road going to and from the landfill.) Westland has not suggested that operation of the landfill site in itself intrudes upon a property right of Westland.

■ 13. Likewise, we have been given no reason to determine that the improvements to the frontage road and the increased traffic flow upon it injured Westland's property rights. The City owned the frontage right of way. It could have improved the road at any time without compensating Westland. Any number of developments could have led to increased traffic flow along the road. The New Mexico Supreme Court has held that the owner of property abutting a public highway has no claim to compensation for changes in the highway so long as the changes do not deprive the owner of adequate access to public roads. *E.g., State ex rel. State Highway Comm'n v. Silva*, 71 N.M. 350, 352, 378 P.2d 595, 596 (1962) (owner of land abutting highway has no vested interest in flow of traffic past his premises); *see Iles v. Commonwealth, Dep't of Transp.*, 124 Pa. Cmwlth. 158, 555 A.2d 312 (1989) (increased traffic did not create compensable taking; taking requires that owner be substantially deprived of use and enjoyment of her property, but owner here still resided in premises and operated beauty salon there); *see generally* Robert A. Brazener, Annotation, *Traffic Noise and Vibration from Highway as Element of Damages in Eminent Domain*, 51 A.L.R.3d 860, § 3 (1973).

14. Also, as in *Campbell*, there was no practical problem with distinguishing between damages caused by use of the condemned property and damages caused by use of property not condemned from the claimant. The trial judge had no apparent difficulty in admitting evidence of damages caused by traffic along the access road (which was on property actually taken from Westland) while excluding evidence of damages caused by traffic along the frontage road and by proximity to the landfill. Thus, the considerations that convinced the United States Supreme Court to deny the condemnee's claim in *Campbell* also argue for rejection of Westland's claim in this case.

15. We recognize that some courts have tempered what appears to be the strict rule of *Campbell*. For example, the Ninth Circuit Court of Appeals, relying on portions of the above-quoted language from *Campbell*, has held that the strict rule of *Campbell* does not apply when

> (1) the land taken from the condemnee landowner was indispensable to the ... project; (2) the land taken constituted a substantial (not inconsequential) part of the tract devoted to the project; and (3) the damages resulting to the land not taken from the use of the land taken were inseparable from those to the same land flowing from the condemnor government's use of its adjoining land in the ... project.

*United States v. 15.65 Acres of Land,* 689 F.2d 1329, 1332 (9th Cir.1982) (acquisition of land as portion of national recreation area; reversing and remanding award to owner because court permitted compensation for diminution in value of retained property caused by the taking and use of neighboring tract without requiring that the three listed elements be established), *cert. denied,* 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983); *accord United States v. Pope & Talbot, Inc.,* 293 F.2d 822 (9th Cir.1961) (timber producer entitled to compensation for damages from reduced accessibility of uncondemned land caused by flooding of condemned land and government land as part of dam project; but damages not recoverable for fire threat created by increased recreational use of government land); *State v. Schmidt,* 867 S.W.2d 769, 778–79 (Tex.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2741, 129 L.Ed.2d 861 *and cert. denied,* —— U.S. ——, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994).

16. Other courts have adopted a similar test that appears to be rationalized by essentially the same considerations. One leading case states that "where the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land." *Andrews v. Cox,* 129 Conn. 475, 29 A.2d 587, 590 (1942); *accord City of Crookston v. Erickson,* 244 Minn. 321, 69 N.W.2d 909 (1955).

▮ 17. But these seemingly more generous standards provide little comfort for Westland. The additional generosity is quite limited. Westland's claim clearly fails the third requirement of the three-part test stated in *15.65 Acres* because, as discussed above, the damages from use of the condemned portion of the parcel were separable from those caused by use of the frontage road and by proximity of the landfill. The case we have found that is most closely in point factually to the present case rejected compensation on just that ground. In *Griffith v. Montgomery County,* 57 Md.App. 472, 470 A.2d 840, 845, *cert. denied,* 300 Md. 484, 479 A.2d 373 (1984), *and cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985), the court held that landowners were not entitled to compensation for the reduction in value of their land resulting from the use of an adjacent landfill even though a portion of their property had been condemned to construct the access road to the landfill.

▮ 18. The rule adopted in *Andrews* also does not aid Westland. The requirement that there be an "integral and inseparable part of a single use" has not been applied expansively. In *Andrews* itself, for example, the loss in value of the landowner's remaining property resulted from an embankment that obstructed the view from the property. The embankment was constructed as part of a highway project. The slope of the embankment began on the land condemned from the owner. The decision to award compensation was based on the fact that the portion of the embankment on the condemned land was "an integral and inseparable part of a single use"—the embankment—which reduced the market value of the remainder of the owner's land.

19. Particularly illuminating is the opinion in *City of Crookston,* which adopted the *Andrews* test. *City of Crookston,* 69 N.W.2d at 914. In that case the city condemned all or part of three tracts: A, B, and C. A sewage disposal plant was to be constructed on tract A, all of which was condemned. In addition, six and one-half acres of tract B were condemned as part of the site for the sewage plant, although no construction would actually be placed on the tract B acreage. The court ruled that the jury should determine whether the tract B acreage "was an integral and inseparable part of the sewage disposal plant project." *Id.* If so, the jury would need to consider the effect of the disposal plant in determining the reduction in market value of the remainder of tract B. As for tract C, the city condemned from that tract a strip 33 feet wide to provide a right of way for the sewer pipe leading from the river to the sewage disposal plant. The court held "as a matter of law, the use of the land taken on tract C does not constitute an integral and inseparable part of the sewage disposal plant project and therefore any depreciation in the

market value of tract C resulting from the mere proximity of the disposal plant and the contemplated user thereof is not recoverable." *Id.* We see no principled distinction between the right of way for the pipe to the sewage plant and the right of way for the access road to the landfill. Just as the pipe is separable (in terms of measurement of damages) from the sewage plant, the access road is separable from the landfill. Also, in our view, as previously stated, damages caused by increased traffic on the frontage road are equally separable from damages caused by use of the access road.

20. In sum, the great (perhaps unanimous) weight of case authority and the rationale for such authority convinces us that the trial judge properly denied Westland compensation for any reduction in the value of the uncondemned portion of its parcel resulting from the proximity of the landfill and the increased traffic on the frontage road.

## II. ALLEGED VIOLATION OF PRE-TRIAL ORDER AND MISLEADING OF WESTLAND

21. The pretrial order entered in this case prohibited the introduction at trial of evidence of damages to Westland's "remaining property resulting from the creation, existence and operation of the Cerro Colorado Landfill on adjoining property." Westland contends that the district court violated the pretrial order when it admitted testimony by the City's appraiser "regarding development and land values around the Rio Rancho landfill in an effort to show that the existence of the Rio Rancho landfill does not negatively affect land values." Westland's characterization of the appraiser's testimony is incorrect. The testimony related to the impact on property values of garbage truck traffic along roads leading to the Rio Rancho landfill, not the impact on property values of the proximity of the landfill. Admission of the evidence did not violate the pretrial order. The evidence was admissible to rebut claims by Westland regarding the diminution in value of its property arising from garbage-truck traffic along the access road through its parcel.

22. In a similar argument Westland contends that the trial judge misled it regarding what evidence would be admissible. It claims that the judge indicated that Westland could not introduce evidence regarding the impact of the landfill on property values but then permitted the City to introduce such evidence. Our review of the record reveals no such error. The trial judge consistently prohibited testimony by both parties regarding the impact on property values of proximity to a landfill. At the same time, however, the court consistently admitted evidence regarding the impact on property values of traffic going to and from landfills. The trial judge's rulings were both consistent and proper.

## III. EXCLUSION OF WESTLAND DIRECTORS FROM TRIAL

23. At the beginning of the trial the City requested the trial judge to exclude witnesses from the courtroom pursuant to SCRA 1986, 11–615 (Repl.1994). The purpose of the rule is to prevent witnesses from shaping their testimony to match that given by preceding witnesses. *State v. Ortiz,* 88 N.M. 370, 377, 540 P.2d 850, 857 (Ct.App. 1975). The court ordered exclusion of all witnesses except for one representative designated by each party. Westland designated Leroy Chavez, a project engineer for Westland. Westland complains about the exclusion of Barbara Page and Carlos Saavedra, who were directors and shareholders of Westland. It contends that as owners and directors, Page and Saavedra were parties who could not be excluded from the courtroom.

24. We disagree. Rule 11–615 states:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of:

A. a party who is a natural person; or

B. an officer or employee of a party which is not a natural person designated as its representative by its attorney; or

C. a person whose presence is shown by a party to be essential to the presentation of the party's cause.

Because Westland is not a natural person, the Rule permits only one client representative to be designated by Westland's attorney. The court did not err in excluding Page and Saavedra. *See Oliver B. Cannon & Son v. Fidelity & Casualty Co.,* 519 F.Supp. 668, 679 (D.Del.1981). In any event, the exclusion order had no effect on Page, who was the first witness at trial and was permanently excused by the trial judge after she completed her testimony, thereby freeing her to remain in the courtroom throughout the trial. Saavedra was the third witness at trial and was also free to remain in the courtroom after he testified. We find without merit Westland's contention that the exclusion of the witnesses violated due process.

## IV. EXCLUSION OF TESTIMONY BY BOARD MEMBER REGARDING DAMAGES

25. Westland complains that the trial judge did not allow Carlos Saavedra to testify regarding the loss in value of Westland's property resulting from the condemnation. It contends that the owner of condemned property is entitled to testify to the value of the property and that Saavedra, as a member of Westland's board of directors, was an owner of the Westland parcel.

26. We agree that ordinarily an owner should be permitted to testify as to the value of property taken in condemnation. *See State ex rel. State Highway Comm'n v. Chavez,* 80 N.M. 394, 396, 456 P.2d 868, 870 (1969). Nevertheless, it was within the trial judge's discretion to refuse to permit Saavedra's testimony. The trial judge had already permitted Barbara Page, president and chief administrative officer of Westland, to testify regarding the value and decrease in value of the property. She had testified that the loss in value due to the taking was $10 million to $12 million. Also, Leroy Chavez, Westland's project manager, had been permitted to testify that the loss in value to Westland's property was $12 million. Westland tendered Saavedra's testimony that the loss in value to Westland's property would be $14 million.

27. The trial judge was not required to permit every director, officer, or shareholder of Westland to testify on substantially the same matter. Relevant evidence may be excluded if it constitutes "needless presentation of cumulative evidence." SCRA 1986, 11–403 (Repl.1994). We defer to the sound discretion of the trial judge in determining whether evidence should be excluded as cumulative. *See State v. Lovato,* 91 N.M. 712, 715, 580 P.2d 138, 141 (Ct.App.), *cert. denied,* 91 N.M. 751, 580 P.2d 972 (1978). We find no abuse of discretion here.

## V. EXCLUSION OF EVIDENCE IN CROSS–EXAMINATION

28. Westland complains that the district court improperly hampered its cross-examination of the City's witnesses. It raises several specific matters. We can dispose of each summarily.

29. First, Westland complains about the exclusion of several reports filed by the City with a state agency. The trial judge refused to admit them because they had not been disclosed in the pretrial order, *see State ex rel. State Highway Dep't. v. Branchau,* 90 N.M. 496, 565 P.2d 1013 (1977), and were cumulative evidence. We need not address the merits of the judge's ruling. Although Westland argues that the reports would impeach testimony by City witnesses, its brief fails to direct us to the specific testimony that would have been impeached. We will not search the record for error and therefore reject Westland's complaint. *See Sharts v. Walters,* 107 N.M. 414, 420, 759 P.2d 201, 207 (Ct.App.1988).

30. Second, Westland complains about the exclusion of certain photographs. The court examined a box of pictures offered by Westland and required Westland to pick the five best representatives of what it wanted to show; the others were excluded. Westland has failed to establish why the remaining photographs would not have been needlessly cumulative. *See* SCRA 11–403.

31. Third, Westland complains that it was not permitted to cross-examine Dr. Gene Romo using minutes of a meeting of the

board of county commissioners. But the portions of the trial transcript to which Westland refers contain cross-examination in which Dr. Romo was questioned on the basis of the minutes. We fail to see any error.

32. ■ Fourth, Westland contends that it was not permitted to cross-examine the manager of the Rio Rancho Landfill regarding violations by his company in the operation of landfills in New Mexico. At trial, after Westland's attorney asked the witness whether his company had been cited by the state environmental department, the attorney explained to the court: "If the properties around the landfill are supposed to be so valuable, I think the relevance is that if the operation of the landfill is not appropriate, then it certainly tends to lower the value of the surrounding properties." The trial judge ruled that the evidence was irrelevant. We agree because, as explained above, the impact of the operation of the landfill was not an appropriate element of damages.

33. Fifth, Westland contends that the trial judge did not allow it to introduce into evidence Travis Engelage's deposition for the purpose of impeaching his testimony. The trial judge permitted Westland to cross-examine the witness from his deposition by reading questions and answers from the deposition. The trial judge, however, refused to admit the deposition itself into evidence because he did not think that the deposition testimony was inconsistent with the witness's testimony at trial. SCRA 1986, 11–801(D)(1)(a) (Repl.1994) (prior inconsistent statement of trial witness is not hearsay). On appeal Westland has made no effort to show that Engelage's deposition testimony was inconsistent with his trial testimony. We affirm the ruling of the district court.

34. ■ Finally, Westland complains that it was not permitted to use various other documents to cross-examine the City's witnesses. But because Westland fails to describe the contents of the documents or explain why they were appropriate for cross-examination, we need not address the contentions. The appellant has the burden to point out clearly and specifically the error it asserts on appeal. *See Novak v. Dow,* 82 N.M. 30, 33, 474 P.2d 712, 715 (Ct.App.1970).

## VI. PHOTOGRAPHS AND JURY VIEW

■ 35. Westland contends that the jury was unable to determine the true condition of the portion of Westland's parcel that was not condemned because the trial judge refused to admit some of Westland's tendered photographs and refused to permit a jury view of the property. We disagree. The trial exhibits contain sufficient diagrams and photographs that the judge could properly determine that additional photographs and a jury view were unnecessary to the jury's full understanding of the matters at issue. *See El Paso Elec. Co. v. Landers,* 82 N.M. 265, 266, 479 P.2d 769, 770 (1970) (jury view is within discretion of trial judge).

## VII. CONCLUSION

36. For the above reasons, we affirm the judgment of the district court.

37. IT IS SO ORDERED.

ALARID, J., concurs.

BLACK, J., concurs in result only.