**DEPARTMENT OF TRANSPORTATION OF the STATE of Colorado and Regional Transportation District, a political subdivision of the State of Colorado, Plaintiffs–Appellees,**

v.

**MARILYN HICKEY MINISTRIES, d/b/a Happy Church, Defendant–Appellant.**

**No. 04CA0928.**

Colorado Court of Appeals, Div. III.

Oct. 6, 2005.

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.

Certiorari Granted March 20, 2006.*

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, James Birch, Denver, Colorado; John W. Suthers, Attorney General, Denver, Colorado, for Plaintiffs–Appellees.

Faegre & Benson, LLP, Leslie A. Fields, John R. Sperber, M. Patrick Wilson, Denver, Colorado, for Defendant–Appellant.

\* Justice EID does not participate.

PLANK **, J.

In this eminent domain case, defendant, Marilyn Hickey Ministries (MHM), appeals the trial court's order denying damages for loss of visibility of the subject property from Interstate 25 resulting from the construction of a concrete retaining wall built by plaintiffs, Colorado Department of Transportation and Regional Transportation District (collectively CDOT). We reverse and remand.

## I. Background

MHM is a large church and ministries center located at the intersection of Orchard Road and I–25. MHM owns the approximately ten acres upon which the church is located.

In November 2001, CDOT filed a condemnation action to take approximately 10,000 square feet of MHM's property. The property taken parallels I–25 and was acquired as part of the long-term freeway construction project known as T–Rex. Once CDOT acquired the property, it constructed a light rail line and concrete retaining wall upon the portion taken.

MHM claims that its entire remaining property was damaged by the construction of the wall because the church is no longer visible to motorists who are traveling on I–25.

Before the valuation trial, CDOT filed a motion in limine to exclude all evidence of damages suffered by MHM as a result of the loss of visibility of the church caused by the construction of the wall. After a hearing, the trial court granted CDOT's motion, finding that damages for the loss of visibility of the property were not compensable in Colorado.

MHM filed a motion requesting the court to clarify its oral ruling. In its written order, the court ruled that MHM would be allowed to seek damages for loss of visibility from the property, but not for loss of visibility into the property. This appeal followed.

## II. Compensable Damages

■ MHM contends that the trial court erred in finding that damages resulting from

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

a loss of visibility into the property are not compensable. We agree.

■ "Private property shall not be taken or damaged, for public or private use, without just compensation." Colo. Const. art. II, § 15. When there is a partial taking of a landowner's property, the landowner is entitled to compensation for injury to the remainder of the property. *La Plata Elec. Ass'n v. Cummins*, 728 P.2d 696 (Colo.1986). When there is a reduction in the property value of the remainder, the property owner should be compensated for "all damages that are the natural, necessary and reasonable result of the taking." *La Plata, supra,* 728 P.2d at 700. Moreover, "whether the reduction in market value of the remainder results from aesthetic damage or from some other cause is irrelevant to the question of whether compensation should be awarded for that reduction in value." *Bement v. Empire Elec. Ass'n*, 728 P.2d 706, 708 (Colo.1986); *Herring v. Platte River Power Auth.*, 728 P.2d 709, 712 (Colo.1986)("when a portion of a parcel of land is taken by condemnation, the landowner is entitled to receive compensation for *all* damages to the remainder that are the natural, necessary and reasonable result of the taking, as measured by the reduction of the value of the remaining property").

Here, it is undisputed that CDOT effectuated a partial taking of MHM's property and constructed a concrete wall on the portion of the property that was taken. It is also undisputed that the concrete wall limits traveling motorists' view of the property from I–25. Therefore, any reduction in the property value based on a loss of view into the property naturally, necessarily, and reasonably resulted from the construction of the concrete wall on the land that was taken.

Accordingly, the trial court erred in precluding MHM from presenting evidence of damage to the remainder caused by the loss of visibility of the property from I–25. *See La Plata, supra; Bement, supra; Herring, supra.*

§ 24–51–1105, C.R.S.2005.

CDOT's reliance on *Troiano v. Colorado Department of Highways,* 170 Colo. 484, 463 P.2d 448 (1969), is misplaced. There, the supreme court held that a property owner had no right to afford the traveling public a clear view of the property. However, *Troiano* dealt with an inverse condemnation proceeding, and therefore, no partial taking of the property occurred. Accordingly, *Troiano* is distinguishable. *See also City of Northglenn v. Grynberg,* 846 P.2d 175, 179 n. 4 (Colo.1993)("In *La Plata Electric,* we held that a landowner must be compensated for all damages that are the natural, necessary and reasonable result of a partial taking. Proof that a property owner incurred damage which differs in kind from the damage suffered by the general public, however, remains a requirement for inverse condemnation cases alleging damage when no property is taken.").

Because the trial court erred in ruling that damages for loss of view of the property were not compensable, we reverse the order and remand for consideration by the board of commissioners of evidence in this regard.

### III. Damages Calculation

MHM also contends that the trial court erred in not employing the doctrine of inseparability in calculating its damages for the loss of view of the property, which would allow MHM to recover for damages to the remainder caused by work done on property other than the property taken. We disagree.

In an eminent domain proceeding, the court determines all questions and issues except the amount of compensation. Section 38–1–101, C.R.S.2005. A board of commissioners of not less than three disinterested and impartial freeholders ascertains the amount of compensation. *Jagow v. E–470 Pub. Highway Auth.,* 49 P.3d 1151 (Colo. 2002). Section 38–1–105(2), C.R.S.2005, which sets forth the rules for calculating the compensation, provides in part:

> [The commissioners] shall hear the proofs and allegations of the parties according to the rules of evidence and ... shall ascertain and certify the proper compensation to be made to said owner or parties interested for the lands, real estate, claims, or

other property to be taken or affected, as well as all damages accruing to the owner or parties interested in consequence of the condemnation of the same.

The supreme court interpreted this statute in *Keller v. Miller,* 63 Colo. 304, 165 P. 774 (1917). Although there have been minor changes made to this statute since *Keller* was decided, the language relevant to the issue before us has remained unchanged.

In *Keller,* the main contention was that the jury should have considered the question of damages, if any, to Keller's two tracts caused by the construction of the condemnor's drainage ditch on the adjoining lands of two third parties.

The supreme court concluded that the statute does "not contemplate the awarding of such damages as result by what is done outside of the land condemned," and therefore, "[d]amages to the remainder by what is done elsewhere than on the part taken are not to be considered." *Keller, supra,* 63 Colo. at 307, 165 P. at 776 (quoting Lewis, *Eminent Domain* § 569 (2d ed.) ). Accordingly, the court ruled that damages to the remainder which were recoverable were "those which result from the taking of the land condemned, and in the case at bar cannot include those accruing 'from the operation of ditches and drains on land of others." ' *Keller, supra,* 63 Colo. at 308, 165 P. at 776; *see also Pub. Serv. Co. v. City of Loveland,* 79 Colo. 216, 237, 245 P. 493, 502 (1926).

Therefore, we conclude that MHM is limited to recovery of those damages that arose from the construction of the concrete wall on its property, and not any damages suffered as a result of the construction of the wall on any adjoining landowners' property.

MHM nevertheless contends that numerous other states have applied the doctrine of inseparability, an exception to the general rule of recovery. The inseparability doctrine allows for the compensation of damages suffered as a result of improvements on adjoining land where "the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put." *Andrews v.*

*Cox,* 129 Conn. 475, 29 A.2d 587, 590 (1942); *see also Lee County v. Exch. Nat'l Bank,* 417 So.2d 268 (Fla.Dist.Ct.App.1982); *Pack v. Boyer,* 59 Tenn.App. 141, 438 S.W.2d 754 (1968). Under the inseparability doctrine, the court considers the effect of the whole improvement in estimating the decrease in value of the remainder. *Andrews, supra.*

We recognize that the supreme court in *La Plata* acknowledged the existence of the inseparability doctrine. However, the applicability of the doctrine was not at issue, and therefore, the court declined to consider it.

Although the *Keller* case was decided in 1917, we are bound by the rulings of the supreme court, and therefore, we reject MHM's contention. Moreover, we must presume that the legislature is aware of prior decisional law regarding this issue, and therefore, if it wanted to recognize the doctrine of inseparability, it would have amended the statute to allow for that exception. *See People v. Green,* 734 P.2d 616, 621 (Colo. 1987).

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge TAUBMAN and Judge CASEBOLT concur.