**DEPARTMENT OF TRANSPORTATION OF The STATE of Colorado, and Regional Transportation District, a political subdivision of the State of Colorado, Petitioners**

**v.**

**MARILYN HICKEY MINISTRIES, d/b/a Happy Church, Respondent.**

No. 05SC816.

Supreme Court of Colorado, En Banc.

May 29, 2007.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, James Birch, Denver, Colorado, Attorneys for Petitioners.

John W. Suthers, Colorado Attorney General, Denver, Colorado, Attorney for Petitioner Colorado Department of Transportation.

Faegre & Benson LLP, Leslie A. Fields, John R. Sperber, Denver, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I.  Introduction

This is an eminent domain case arising from the construction of a light rail line as part of the Transportation Expansion Project ("T–REX") of Interstate 25 ("I–25") in the Denver Metropolitan area.  The Colorado Department of Transportation ("CDOT") and the Regional Transportation District ("RTD") appeal the court of appeals' decision in *Department of Transportation v. Marilyn Hickey Ministries,* 129 P.3d 1068 (Colo.App. 2005), and argue that there is no compensable right for lost visibility to determine property value in eminent domain proceedings. We granted certiorari to determine whether the court of appeals erred in ruling that the landowner, part of whose property is being taken by eminent domain for a state transportation project, may recover damages for the impairment of passing motorists' view of the remainder of the landowner's property. We reverse the court of appeals and hold that motorists' visibility of property is not a compensable right under the Colorado Constitution.

## II.  Facts and Procedural History

T–REX was a massive $1.67 billion freeway expansion and light rail project directed by CDOT and RTD to alleviate severe congestion on I–25 and I–225 throughout the central and southeast corridor of Denver's freeway network.  In addition to widening I–25 and I–225 in the central and southeast corridor of the Denver metropolitan area and building a new light rail transit line, T–REX rebuilt several bridges and interchanges, improved drainage, enhanced bicycle and pedestrian access, and provided transportation management elements.  The five-year project was financed by two voter-approved bonds and the Federal Transit Administration.

As part of the construction of light rail in the transit corridor, CDOT filed a condemnation action to take a narrow strip of land, 650 feet long, from Marilyn Hickey Ministries d/b/a Happy Church ("the Happy Church") west of I–25 at the intersection of Orchard Road.[1] Orchard Road is a major interchange on I–25, allowing motorists to enter and exit the freeway in both directions.  The Happy Church is located at the northwestern corner of the intersection adjacent to the southbound lanes of traffic exiting to Orchard Road. CDOT and RTD constructed a concrete retaining wall on the condemned property to support an overpass of the light rail line over Orchard Road. The Happy Church claims that the retaining wall obscures passing motorists' views of its remaining property, which includes a substantial church complex.  CDOT and RTD do not dispute that the retaining wall obscures motorists' views. They also point out that the newly constructed light rail line affords an unobstructed view for light rail passengers looking toward the Happy Church's remaining property.

The Happy Church acquired its entire 10 acre parcel of land in 1990 and converted a preexisting shopping center building into a sprawling complex of church and ministerial facilities.  The building's entrance faces Orchard Road. It is undisputed that the retaining wall does not obstruct passing motorists' visibility of, or access to, the remainder property from Orchard Road.

In the trial court, the Happy Church sought approximately $1.9 million in damages for the loss of motorists' views from I–25 into the remaining property and church buildings. CDOT and RTD successfully filed a motion in limine to exclude any evidence of decreased property value resulting from the remainder property's loss of visibility.  The trial court found that the view of the remaining church property from I–25 across property owned by other landowners was not compensable and that damages, if any, would be limited to the loss of view arising from the specific section of retaining wall built upon the 650 foot strip of land taken through

1.  The condemned strip of land is approximately 10,000 square feet and the Happy Church's entire parcel from which the property was taken constitutes approximately 10 acres, or 436,000 square feet.

eminent domain.[2] The board of commissioners (the entity empaneled to make eminent domain compensation valuations pursuant to section 38–1–101(2)(a), C.R.S. (2006)) later determined that the value of the taken property in the absence of visibility damages to the remaining property was $259,000.

The Happy Church appealed the trial court's order excluding evidence of visibility damages, and in *Marilyn Hickey,* 129 P.3d at 1068, the court of appeals reversed. The court cited *La Plata Electric Association v. Cummins,* 728 P.2d 696, 698 (Colo.1986), and held that the Happy Church should be compensated for "any reduction in property value naturally, necessarily, and reasonably" resulting from the construction of the concrete wall on the taken property. *Id.* Thus, the court remanded the case to the trial court for the board of commissioners to determine the value of motorists' diminished visibility of the remaining property and to include this amount as part of the damages due in compensation for the taking.

### III. Discussion

■ The Colorado Constitution requires that "private property shall not be taken or damaged, for public or private use, without just compensation." Colo. Const. art. II, § 15. In conducting an eminent domain proceeding, the trial court determines all questions and issues except the amount of compensation, unless otherwise stipulated by the parties. § 38–1–101(2)(a), C.R.S. (2006).[3] A board of commissioners of not less than three disinterested and impartial freeholders ascertains the amount of compensation. *Id.* If a taking leaves a landowner with remainder property, damages to the remainder property are cognizable under Colorado law. *Ja-*

*gow v. E–470 Pub. Highway Auth.,* 49 P.3d 1151, 1156 (Colo.2002). "When a portion of a landowner's property is taken, just compensation includes compensation for injury to the remainder of the property as well as payment for the portion actually taken." *Jagow,* 49 P.3d at 1156 *(citing La Plata,* 728 P.2d at 698). In *La Plata,* we held that "[a] property owner should be compensated for all damages that are the natural, necessary and reasonable result of the taking." 728 P.2d at 700. The court of appeals relied on this broad language in reaching its conclusion that the Happy Church should be compensated for its lost visibility to passing motorists.

The *La Plata* court, however, recognized that highway access cases are different from the case that was then before it and that highway access cases require a different damages analysis. 728 P.2d at 701 n. 4 and accompanying text. Generally, freeway visibility is analyzed as an access claim and condemnees have been found to have no right to visibility. *See Troiano v. Colorado Dep't of Highways,* 463 P.2d 448, 455–56, 170 Colo. 484, 500–01 (1969); *Accord Regency Outdoor Adver., Inc. v. City of Los Angeles,* 39 Cal.4th 507, 46 Cal.Rptr.3d 742, 139 P.3d 119, 126 (2006)(citing *Troiano* among other cases). We find the court of appeals' reliance on *La Plata* to be misplaced; the controlling precedent is *Troiano.* We hold that because a landowner has no continued right to traffic passing its property, the landowner likewise has no right in the continued motorist visibility of its property from a transit corridor.

*Troiano* addressed compensation for lost visibility of, and access to, property caused by construction of an interstate highway.

---

**2.** We denied certiorari on the issue of whether, in a condemnation action, Colorado law limits a landowner's damages to only those portions of the project being built on the owner's property. We granted certiorari on the issue of whether damages were compensable based upon the loss of motorists' visibility across the 650 foot strip of land.

**3.** Section 38–1–101(2)(a) provides:
In all cases in which compensation is not made by the state in its corporate capacity, such compensation shall be ascertained by a board of commissioners of not less than three

disinterested and impartial freeholders pursuant to section 38–1–105(1) or by a jury when required by the owner of the property as prescribed in section 38–1–106. All questions and issues, except the amount of compensation, shall be determined by the court unless all parties interested in the action stipulate and agree that the compensation may be so ascertained by the court. In the event of such stipulation and agreement, the court shall proceed as provided in this article for the trial of such causes by a board of commissioners or jury.

463 P.2d at 455. In that case, the owner of the Colonial Manor Motel brought an inverse condemnation action seeking damages for the diminution in market value of her motel resulting from the construction of the Interstate 70 ("I–70") viaduct over East 46th Avenue. *Id.* at 450. The motel fronted on East 46th Avenue. *Id.* None of the motel property was taken through eminent domain, but the landowner argued that substantial access impairment resulted from an elevated stretch of I–70 being constructed above East 46th Avenue, even though the avenue remained in place underneath the freeway. *Id.* Additionally, the landowner claimed that motorists could no longer see her motel because it was hidden below the viaduct. *Id.* at 455.

The evidence in *Troiano* demonstrated that, while the I–70 viaduct may have obstructed motorists' views of the motel from I–70, access to and from the motel was not impaired by the erection of the viaduct. *Id.* at 450. We held that "so long as the landowner retains a reasonable means of access to and from his property partial loss of access is not compensable." *Id.* at 451. Additionally, we concluded that "[w]ith the majority view holding that a property owner has no right to have the traveling public pass his property, logically it would be inconsistent to say that a property owner has a right to have the traveling public afforded a clear view of his property." *Id.* at 455.

Nearly eighteen years after *Troiano* was decided, the Missouri Court of Appeals held that "any claim as to damages for 'public view' or visibility is 'inextricably related' to a property right in the traffic, [and] the decisions have consistently refused to 'accord to property owners any right in the continuation of traffic.' " *State ex rel. Mo. Highway Transp. Comm'n v. Dooley*, 738 S.W.2d 457, 468 (Mo.App.1987) *(citing Kansas City v. Berkshire Lumber Co.*, 393 S.W.2d 470 (Mo. 1965)). *Dooley* held that the "loss of visibility of a commercial enterprise due to a change in grade is not an element of damages in a condemnation proceeding."[4] *Id.* at 469. *See* 4A Julius L. Sackman, *Nichols on*

*Eminent Domain* § 14A.03[4] (rev.3d ed.2006) (noting a landowner has no control over a neighbor's property and therefore cannot prevent the neighbor from erecting barriers that obstruct the property's visibility, and thus, a public authority takes nothing from the landowner when engaged in the same activity).

The Utah Supreme Court recently decided a case similar to *Dooley* and the case now before us in *Ivers v. Utah Department of Transportation*, 154 P.3d 802 (Utah 2007). The court held that "landowners do not have a protected interest in the visibility of their property from an abutting road, even if part of their land has been taken in the process." *Id.* at 805. In that case, the Utah Department of Transportation had condemned a portion of property (leaving a remainder) for the construction of a frontage road adjacent to a highway reconstruction project. *Id.* at 804. The court cited with approval one of its prior opinions, *Utah State Road Commission v. Miya*, 526 P.2d 926, 928 (Utah 1974), which held that a landowner has no right to a free and unrestricted flow of traffic past his premises and any impairment with traffic flow does not entitle the landowner to compensation. *Ivers*, 154 P.3d at 805. Extending the *Miya* case, the court in *Ivers* concluded that because there is no right to passing traffic, an impairment of the visibility from traffic is not compensable. *Id.* at 805.

Underlying *Troiano*, *Dooley*, and *Ivers* is the recognition that a public transit corridor like I–25 is an always evolving multi-modal point of access to a city's transportation infrastructure. The state's police power enables continued modifications to its public transportation systems and the "[r]ight of access is subject to reasonable control and limitation," *Troiano*, 463 P.2d at 451, 456, 170 Colo. at 491, 500–501. "[L]ogically it would be inconsistent" to recognize a right to visibility but no right to have the traveling public pass one's property. *Id.* at 455, 500. Under *Troiano*, there is simply no inherent property right to continued traffic or visibili-

---

4.   *Contra 8,960 Square Feet v. Dep't of Transp. & Pub. Facilities*, 806 P.2d 843 (Alaska 1991)(holding that visibility damages are compensable because *Dooley* and *Troiano* overlook the fact that

as long as there is a road adjacent to the taken property, part of the value of that property consists of the right to control the visibility of land further away from the road).

ty along the I–25 transit corridor. As an exercise of the state's police powers, CDOT and RTD reasonably constructed the T–REX freeway and light rail portions of the I–25 transit corridor and accomplished this without impairing access to the Orchard Road entrance point to the Happy Church.

Our decision in *La Plata*, 728 P.2d at 700, did not overrule *Troiano*. *La Plata* involved a public utility condemning a 50 foot wide easement for the construction of an electric transmission line across the middle of a 19.6 acre parcel of vacant land that was being held for future development. *Id.* at 697. The opinion describes the transmission line as "unattractive" and obscuring the view looking out from the remaining property toward the mountains and the town of Durango. *Id.* Like many states, we held that construction of the electric transmission lines damaged the aesthetic value of the remaining property. *Id.* at 700. *La Plata* also abolished a historical rule requiring landowners to demonstrate special damages not shared by the public generally in order for such damages to be compensable. *Id.* at 700, 703. Our holding explicitly declined to address whether damages based upon the aesthetic loss caused by power lines constructed on adjoining property were compensable. *Id.* at 702.

The facts and analysis of *La Plata* are distinguishable from the present case as well as from *Troiano*. While *Troiano* was decided when the rule requiring proof of special damages was still in place, our conclusion that the motel's visibility to passing motorists was not compensable was independent from the special damages analysis overruled in *La Plata*. *La Plata* only recognized as compensable the value of a remainder property's aesthetic view, not the visibility of a property from a public transit corridor or the lack of a right to continued traffic flow past a property. 4A Julius L. Sackman, *Nichols on Eminent Domain* § 14A.03[5] (rev.3d ed.2006)

(noting that *La Plata* recognized aesthetic damage to the landowner's view from the remainder caused by an electric transmission power line where the property benefited by its aesthetics before the taking and suffered from the impairment of view as the result of the taking). *La Plata's* analysis involving transmission lines is entirely distinct from *Troiano's* analysis involving the construction of an interstate freeway.

In the present case, the Happy Church does not claim a diminution in aesthetic value because the retaining wall obstructs its view from the remaining property out toward I–25. Nor could it reasonably claim that a view of a busy interstate freeway had any inherent aesthetic value. Rather, the sole basis of its claim is that motorists passing along a narrow 650 foot strip of land have a diminished view of the remainder property.[5] *La Plata* did not recognize a right to visibility looking in toward one's property. As we stated above, *La Plata* only involved the loss of aesthetic value when taking an easement for an electric transmission line and all of the resulting damages following from such a taking.

The court of appeals in the present case held that *Troiano* was distinguishable from the claims in *La Plata* and did not govern the present case because *Troiano* involved an inverse condemnation proceeding where no partial taking of property occurred. *Marilyn Hickey Ministries*, 129 P.3d at 1071. That is not the dispositive distinction, however. The lost visibility claimed by the landowner in *Troiano* and by the Happy Church is nothing more than an access claim. Even before *La Plata*, we recognized that a highway access claim was not dependent on a taking. As we stated, "[W]hether or not property is actually taken is immaterial to the issue of damages to the remainder of the property for loss or limitation of access." *State Dept. of Highways, Div. of Highways v. Davis*, 626 P.2d 661, 665 (Colo.1981). In *Davis*, we noted

---

**5.** The court of appeals and trial court held that the Happy Church may only claim damages caused by the portion of the retaining wall constructed directly on the taken Happy Church property. We denied certiorari to review whether Colorado follows the inseparability doctrine, which relaxes the requirement that landowners may only seek compensation for damages arising to the specific parcel of land taken in eminent domain. Therefore, in this case, the Happy Church is limited by the court of appeals' holding that it may only seek damages arising from the portion of the retaining wall constructed on the taken Happy Church property.

that "[a]ny other result would create serious problems of fairness to landowners similarly situated." *Id.* That the retaining wall was built on the land taken from the Happy Church is of no consequence to whether there is any right to visibility of one's property from a transit corridor in the first place. *See State Dep't of Highways v. Interstate–Denver W.,* 791 P.2d 1119, 1120 (Colo.1990)(holding that whether property is actually taken is immaterial to the question of whether there has been a substantial limitation or loss of access which is compensable); *Davis,* 626 P.2d at 665. Thus, the fact that *Troiano* was an inverse condemnation case is immaterial.

Finally, while the original construction of I–25 may have provided a benefit of motorist visibility looking toward the Happy Church property, this benefit was constructed with taxpayer funding as a part of a major public works project. A motorist's view of the Happy Church prior to T–REX was an artificially created condition, established in an exercise of the state's police power, which does not inhere in the compensable value of the Happy Church property. Oliver Wendell Holmes, Jr. noted long ago that "when a benefit is conferred upon a landowner, the value of which he does not pay for, he takes it upon the implied condition that he shall not be paid for it when it is taken away." *Stanwood v. Malden,* 157 Mass. 17, 18, 31 N.E. 702, 703 (1892). There is no right to have a freeway remain in place despite its purported benefits to adjacent landowners. The Happy Church cannot recover for the loss of motorists' visibility because it never had a right to continued traffic passing its property.

## IV. Conclusion

The visibility of a property as seen from a public transit corridor is not a compensable property right under the Colorado Constitution and our case law. We hold that the owner of remainder property resulting from a partial taking alongside a transit corridor may not seek compensation for the loss of passing motorists' views of the remainder property caused by a wall built on the condemned portion of land. The opinion of the court of appeals is reversed and the case is remanded to the court of appeals with directions to reinstate the trial court's judgment.

Justice EID does not participate.